994 F.2d 1076
 John HUTCHINSON; William Reese; Leonard Underwood,
Plaintiffs-Appellees,
v.
David Michael STATON, Defendant-Appellant,
and
Margaret D. Miller, Individually and as Clerk of the County
Commission of Kanawha County, West Virginia; Steven L.
Miller; James E. Roark, Individually and as Prosecuting
Attorney of Kanawha County, West Virginia; John A.
Cavacini, Jr.; Henry C. Shores, as Commissioner of Kanawha
County, West Virginia; Robert F. Silverstein, as
Commissioner of Kanawha County, West Virginia; Computer
Election Systems, a foreign corporation; Bernard H.
Meadows; Clayton Spangler; Irvine Keith Long; Carl
Clough; Cherrie Lloyd; William E. Biebel; Darlene Dotson;
Carolyn Critchfield, Individually and as Voter Registrar of
Kanawha County, West Virginia; Ann Carroll, Individually
and as Chief Deputy of the County Commission of Kanawha
County, West Virginia, Defendants.
John HUTCHINSON; William Reese; Leonard Underwood,
Plaintiffs-Appellees,
v.
James E. ROARK, Individually and as Prosecuting Attorney of
Kanawha County, West Virginia, Defendant-Appellant,
and
Margaret D. Miller, Individually and as Clerk of the County
Commission of Kanawha County, West Virginia; David Michael
Staton; Steven L. Miller; John A. Cavacini, Jr.; Henry C.
Shores, as Commissioner of Kanawha County, West Virginia;
Robert F. Silverstein, as Commissioner of Kanawha County,
West Virginia; Computer Election Systems, Incorporated, a
foreign corporation; Bernard H. Meadows; Clayton Spangler;
Irvine Keith Long; Carl Clough; Cherrie Lloyd; William
E. Biebel; Darlene Dotson; Carolyn Critchfield,
Individually and as Voter Registrar of Kanawha County, West
Virginia; Ann Carroll, Individually and as Chief Deputy of
the County Commission of Kanawha County, West Virginia, Defendants.
John HUTCHINSON; William Reese; Leonard Underwood,
Plaintiffs-Appellees,
v.
COMPUTER ELECTION SYSTEMS, a foreign corporation; Irvine
Keith Long; Carl Clough; William E. Biebel,
Defendant-Appellant,
and
Margaret D. Miller, Individually and as Clerk of the County
Commission of Kanawha County, West Virginia; David Michael
Staton; Steven L. Miller; James E. Roark, Individually and
as Prosecuting Attorney of Kanawha County, West Virginia;
John A. Cavacini, Jr.; Henry C. Shores, as Commissioner
ofKanawha County, West Virginia; Robert F. Silverstein, as
Commissioner of Kanawha County, West Virginia; Bernard H.
Meadows; Clayton Spangler; Darlene Dotson; Carolyn
Critchfield, Individually and as Voter Registrar of Kanawha
County, West Virginia; Ann Carroll, Individually and as
Chief Deputy of the County Commission of Kanawha County,
West Virginia; Cherrie Lloyd, Defendants.
John HUTCHINSON; William Reese; Leonard Underwood,
Plaintiffs-Appellees,
v.
Margaret D. MILLER, Individually and as Clerk of the County
Commission of Kanawha County, West Virginia;
Steven L. Miller, Defendants-Appellants,
Charles I. Jones, Jr., Trustee of the Bankruptcy Estate of
Margaret D. Miller and Steven L. Miller, Trustee-Appellant,
and
David Michael Staton; James E. Roark, Individually and as
Prosecuting Attorney of Kanawha County, West Virginia; John
A. Cavacini, Jr.; Henry C. Shores, as Commissioner of
Kanawha County, West Virginia; Robert F. Silverstein, as
Commissioner of Kanawha County, West Virginia; Computer
Election Systems, Incorporated, a foreign corporation;
Bernard H. Meadows; Clayton Spangler; Irvine Keith Long;
Carl Clough; Cherrie Lloyd; William E. Biebel; Darlene
Dotson; Carolyn Critchfield, Individually and as Voter
Registrar of Kanawha County, West Virginia; Ann Carroll,
Individually and as Chief Deputy of the County Commission of
Kanawha County, West Virginia, Defendants.
 Nos. 92-2250, 92-2370, 92-2371, 92-2372.
 United States Court of Appeals,
Fourth Circuit.
 Argued March 31, 1993.
Decided May 24, 1993.
 
 David Dale Johnson, III, Spilman, Thomas, Battle & Klostermeyer (Charles I. Jones, Jr., Campbell, Woods, Bagley, Emerson, McNeil & Herndon, on brief), Charleston, WV, for defendants-appellants Miller.
 William E. Mohler, on brief, Charleston, WV, for defendant-appellant Staton.
 James B. McIntyre, on brief, Charleston, WV, for defendant-appellant Roark.
 Jack Older Friedman, Sr. (John R. Mitchell, Sr., on brief), Charleston, WV, for plaintiffs-appellees.
 Before ERVIN, Chief Judge, and PHILLIPS and WILKINSON, Circuit Judges.
 OPINION
 WILKINSON, Circuit Judge:
 
 
 1
 Defendants in this case appeal the district court's decision to withdraw its earlier award of attorneys' fees to defendants under 42 U.S.C. § 1988. Finding that fees should have been awarded to defendants in this action, we reverse the district court and remand with instructions that the court reinstate its original award of fees.
 
 I.
 
 2
 Plaintiffs John Hutchinson, Leonard Underwood, and William Reese were unsuccessful candidates for federal, state, and local office, respectively, in the 1980 general election in West Virginia. In February 1983, plaintiffs sued a number of parties in federal court, alleging that these parties had worked individually and collectively to fix the general election in Kanawha and Boone Counties, West Virginia. Named as defendants were David Staton, the candidate who defeated the incumbent Hutchinson in the race for Congress; Computer Election Systems, Inc., the computer company that provided the vote tabulation system for the election; CES employees who helped operate the vote tabulation system on election night; local officials who were responsible for conducting the election; and private citizens who were active in local politics. Plaintiffs asserted claims under 42 U.S.C. § 1983, 18 U.S.C. § 1964 (RICO), and the common law of West Virginia.
 
 
 3
 Initially, the district court ordered plaintiffs to provide more detailed allegations in their complaint. Defendants then moved to dismiss. The court dismissed one of the CES employees. As to the remaining defendants, the court ruled that the limitations period had expired for their alleged individual acts, and limited plaintiffs' complaint to the claim of conspiracy. The court remarked that even this portion of plaintiffs' complaint barely survived dismissal.
 
 
 4
 Following extensive discovery, defendants moved for summary judgment. The court granted summary judgment to three more of the individual defendants, and ruled that the claim of a Boone County conspiracy was time-barred. The case then went to trial, which lasted fifteen days. During trial, plaintiffs voluntarily dismissed two defendants who were Commissioners of Kanawha County. At the close of plaintiffs' evidence, the court directed verdicts for all of the remaining defendants, finding that the only evidence of election-rigging was "purely speculative" and "mere suspicion."
 
 
 5
 Plaintiffs appealed to this court; we affirmed. Hutchinson v. Miller, 797 F.2d 1279 (4th Cir.1986). We ruled that the federal courts were not available for damages claims by defeated candidates, because adjudicating such claims would put federal courts in the illegitimate role of second-guessing the outcome of elections properly committed to the control of the states. Id. at 1285-87. We recognized that the federal courts had taken an active role in protecting the state electoral process from class-based discrimination and improper restrictions on the franchise. Id. at 1283. Plaintiffs' complaint raised no such issues, however, and so we held that they had failed to state a federal claim.
 
 
 6
 Defendants then moved in the district court for attorneys' fees, invoking their status as "prevailing parties" under 42 U.S.C. § 1988. The district court ruled that plaintiffs' complaint was "frivolous, groundless, and unreasonable" under Christiansburg Garment Co. v. EEOC, 434 U.S. 412, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978). Accordingly, the court ordered plaintiffs to pay defendants' fees.
 
 
 7
 In so ruling, the district court carefully analyzed plaintiffs' legal claim, the evidence adduced in support of that claim, and when plaintiffs should have realized that the claim was groundless. The court ruled first that plaintiffs' claim was not legally frivolous when filed. Prior to our ruling in Hutchinson, the law regarding election fraud claims was murky. Some pre-Hutchinson case law suggested that large-scale election fraud conspiracies were actionable under 42 U.S.C. § 1983, although in none of these cases was a defeated candidate seeking damages. Only in Hutchinson did we lay down the bright-line rule that defeated election candidates could not bring § 1983 claims for damages. The district court thus found that plaintiffs might reasonably have surmised, at the time of their suit, that they had a valid legal claim.
 
 
 8
 The district court found otherwise, however, as to the facts supporting that claim. Plaintiffs' theory, greatly condensed, was that a cabal of private citizens and local election officials had hired Computer Election Systems to design a riggable vote tabulation system. Plaintiffs provided nothing to support this hypothesis, however, except evidence of motive and opportunity. As to defendant Staton, for instance, plaintiffs established only that he had won the election, and thus had benefitted from the alleged fraud. As to CES, plaintiffs established that one of the CES employees operating the vote tabulation system on election night was seen putting a telephone receiver in his brief-case; plaintiffs suggested that he might have had a portable modem in his briefcase, which he was using to manipulate the vote count. As to Margaret Miller, the local official who was allegedly the conspiracy's ringleader and who hired CES, plaintiffs established that she was seen flipping computer toggle switches during the election count, and that her husband was seen handing her computer cards from his pocket. And as to defendant James Roark, an election observer and the Prosecuting Attorney of Kanawha County, plaintiffs established only that some unofficial precinct tabulations bearing his handwriting were circulated after the election. In short, plaintiffs offered proof that defendants might have been able to rig the election, but no proof whatsoever that they actually did. Plaintiffs supplied no evidence of agreement or concerted action among defendants, no evidence of actual vote-tampering by defendants, and no evidence of causation--i.e., that plaintiffs would have won the election but for defendants' fraud.
 
 
 9
 The district court thus concluded that plaintiffs had persisted in their lawsuit long after it had plainly become groundless. "[R]ather than becoming clarified by analysis," the court noted, plaintiffs' case only "became more attenuated and illusory as trial time approached." Although the case went to trial on a theory of conspiracy, no evidence was ever offered that most of the alleged co-conspirators "had even the barest awareness of any alleged plan or scheme." The court also ruled that plaintiffs had maintained the action vexatiously. The court observed that plaintiffs had lost the election and "were obviously embittered by that." During trial, it became apparent that plaintiffs had named many of the defendants as part of the conspiracy simply because they had opposed plaintiffs in the election, or because they had helped tabulate the votes that led to plaintiffs' defeat. The court reiterated that "the only thing Defendant Staton was proven to have done in this case was defeat Hutchinson in his bid for reelection to Congress." Finally, the court noted that plaintiffs had listed many witnesses before trial, but then had called other undisclosed witnesses once the trial actually commenced. "Plaintiffs' motive to spite these Defendants with 'make work' of this and other types was not lost on the Court."
 
 
 10
 After reviewing the documentation of legal expenses incurred by defendants, the district court awarded them a total of $598,983.78 in fees.[1] The district court entered orders enforcing this award on August 3, 1987 and December 27, 1988. Plaintiffs moved to alter or amend the orders.
 
 
 11
 On September 25, 1992, the district court granted plaintiffs' motion. Finding it "unnecessary to reconsider" its earlier factual findings, the court stated simply that it had failed to give full consideration to the chilling effect that its fee award would have on future § 1983 actions. On that basis alone, the court vacated its award of fees.
 
 
 12
 Defendants appealed.
 
 II.
 
 13
 "In any action or proceeding to enforce [42 U.S.C. § 1983], the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988. Section 1988 makes no distinction on its face between prevailing plaintiffs and prevailing defendants. In Christiansburg Garment Co. v. EEOC, however, the Supreme Court ruled that prevailing defendants should receive attorneys' fees only when the plaintiff's claim was "frivolous, unreasonable, or groundless," or when "the plaintiff continued to litigate after it clearly became so." 434 U.S. at 422, 98 S.Ct. at 700.[2] The Court made clear that a plaintiff need not have acted in bad faith in order to be liable for fees, although if he did, "there will be an even stronger basis for charging him with the attorney's fees incurred by the defense." Id. 434 U.S. at 422, 98 S.Ct. at 700.
 
 
 14
 The district court properly applied this standard in its original award of fees. First, the court demonstrated that plaintiffs' § 1983 claim had no basis in fact. Even by the time of trial, plaintiffs were unable to back their conspiracy theory with anything beyond conjecture and speculation. Second, the court noted plaintiffs' motives of revenge in bringing the suit, and the great expense to which they had put defendants by taking their case to trial. Finally, the court reviewed each defendant's fee request to insure that it was reasonable, denying fees that were excessive. In short, the court had ample justification for its original fee award.
 
 
 15
 The district court did not disturb these factual findings when it vacated the fee award. Instead, the court rested on the "purely legal ground" of the fee award's potential chilling effect. In defense of this reasoning, plaintiffs cite Fourth Circuit precedent which recognizes the chilling effect as a factor in the Christiansburg determination of when to award attorneys' fees. See Arnold v. Burger King Corp., 719 F.2d 63, 65 (4th Cir.1983); Lotz Realty Co. v. HUD, 717 F.2d 929, 932 (4th Cir.1983). As an abstract matter, plaintiffs are correct, but they overinflate the chilling effect factor in the Christiansburg inquiry. Christiansburg already requires that plaintiff's claim be "frivolous, unreasonable, or groundless." When a court imposes fees on a plaintiff who has pressed a "frivolous" claim, it chills nothing that is worth encouraging. In this case, therefore, once it found plaintiffs' claim to be groundless, the district court allayed any concern that legitimate § 1983 claims would be chilled. By nonetheless denying defendants fees, the court gave double weight to this concern. This double weight was error.
 
 
 16
 Plaintiffs also insist that their claim could not have been factually frivolous, because it survived defendants' motions for dismissal and for summary judgment. Plaintiffs' logic is flawed. "Although in some instances a frivolous case will be quickly revealed as such, it may sometimes be necessary for defendants to 'blow away the smoke screens the plaintiffs ha[ve] thrown up' before the defendants may prevail." Introcaso v. Cunningham, 857 F.2d 965, 967 (4th Cir.1988) (quoting Hicks v. Southern Maryland Health Systems Agency, 805 F.2d 1165, 1168 (4th Cir.1986)). This is all the more true when plaintiffs assert such a complex claim as here. Plaintiffs alleged a two-county-wide election-rigging conspiracy worthy of an Oliver Stone screenplay. Not surprisingly, the district court found it difficult before trial to determine which elements of this theory had some evidentiary foundation, and which were based on mere speculation. Even so, the court gave plaintiffs ample notice that they were skating on thin ice: in denying defendants' motions to dismiss, the court warned plaintiffs that their conspiracy claim had barely survived dismissal. The court gave plaintiffs the benefit of the doubt by allowing their conspiracy claim to go to trial, but this generosity did not negate plaintiffs' responsibility to litigate a factually grounded claim. See Introcaso, 857 F.2d at 967 (awarding fees under § 1988 to defendant even though plaintiff's claim survived motion to dismiss); Spence v. Eastern Airlines, Inc., 547 F.Supp. 204 (S.D.N.Y.1982) (awarding fees under § 1988 to defendant who won directed verdict at close of plaintiff's evidence).
 
 
 17
 Nor does our disposition of plaintiffs' first appeal suggest that their claim must have had factual merit. In Hutchinson, we addressed only the legal issue of whether plaintiffs had stated a valid federal claim. As the district court correctly held, this issue was not settled prior to our decision in Hutchinson; plaintiffs' claim thus was not legally frivolous when filed. That plaintiffs' claim posed a significant question of law, however, does not mean that it had a foundation in the facts. Nothing in Hutchinson undercuts the reality that defendants were forced for several years, and at great expense, to fend off a claim that proved to be factually baseless. Plaintiffs are properly liable for fees.
 
 III.
 
 18
 In the alternative, defendants argue that the district court abused its discretion by reversing its earlier award of fees. We find this argument meritorious as well. Fed.R.Civ.P. 59(e) permits an aggrieved party to file a motion to alter or amend a judgment within ten days of its entry. While the Rule itself provides no standard for when a district court may grant such a motion, courts interpreting Rule 59(e) have recognized three grounds for amending an earlier judgment: (1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice. See, e.g., Weyerhaeuser Corp. v. Koppers Co., 771 F.Supp. 1406, 1419 (D.Md.1991); Atkins v. Marathon LeTourneau Co., 130 F.R.D. 625, 626 (S.D.Miss.1990). Plaintiffs assert neither of the first two grounds; the third ground is not available either. Far from being clear error, the district court's initial fee award was factually supported and legally justified. While plaintiffs disagreed with how the district court applied the Christiansburg standard, mere disagreement does not support a Rule 59(e) motion. Atkins, 130 F.R.D. at 626.
 
 IV.
 
 19
 Because plaintiffs' § 1983 action was without basis under Christiansburg, an award of fees to defendants is warranted. The judgment of the district court is therefore reversed and remanded with instructions that the original award of attorneys' fees to defendants be reinstated.
 
 
 20
 REVERSED AND REMANDED WITH INSTRUCTIONS.
 
 
 
 [1]
 Plaintiffs do not dispute the reasonableness of this figure. In their brief, they acknowledge that "the district court carefully reviewed defendants' documentation of fees and costs and even in some instances reduced the amounts claimed."
 
 
 [2]
 In Christiansburg, the Supreme Court was actually interpreting § 706(k) of Title VII of the Civil Rights Act of 1964, which also permits the district court to award "a reasonable attorney's fee" to the "prevailing party." 42 U.S.C. § 2000e-5(k). In Hughes v. Rowe, 449 U.S. 5, 14-15, 101 S.Ct. 173, 178, 66 L.Ed.2d 163 (1980) (per curiam), the Supreme Court applied Christiansburg to § 1988 as well