**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

In Re: WILLIAM ARTHUR BEETON, JR.,
Appellant,

WILLIAM DEFOE, III,
Plaintiff-Appellant,

v.

CARL R. PEED, in his official
capacity as Sheriff of Fairfax
County; LIEUTENANT WHITLEY,
individually and in his official
capacity as an employee of Fairfax
County Jail; DEPUTY WOODS,
individually and in his official

capacity as an employee of Fairfax
County Jail; DEPUTY CAMARCA,
individually and in his official
capacity as an employee of Fairfax
County Jail; DEPUTY WRIGHT,
individually and in his official
capacity as an employee of Fairfax
County Jail; DEPUTY ELBERT,
individually and in his official
capacity as an employee of Fairfax
County Jail; DEPUTY SCOTT,
individually and in his official
capacity as an employee of Fairfax
County Jail;

No. 95-1734

DEPUTY STEINBECK, individually and in his official capacity as an employee of Fairfax County Jail; DEPUTY PFIESTER, individually and in his official capacity as an employee of Fairfax County Jail; DEPUTY BYRONE, individually and in his official capacity as an employee of Fairfax County Jail; DEPUTY FAIRFAX, individually and in his official capacity as an employee of Fairfax County Jail; JOHN DOE, deputy, individually and in his official capacity as an employee of Fairfax County Jail; JOHN DOE, Sergeant, individually and in his official capacity as an employee of Fairfax County Jail,
Defendants-Appellees,

and

LIEUTENANT CARROLL, individually and in his official capacity as an employee of Fairfax County Jail; LIEUTENANT BLAIN, individually and in his official capacity as an employee of Fairfax County Jail; SERGEANT JEAN, individually and in his official capacity as an employee of Fairfax County Jail; DEPUTY QUARTO, individually and in his official capacity as an employee of Fairfax County Jail;

2

DEPUTY PARRISH, individually and in his official capacity as an employee of Fairfax County Jail; DEPUTY HAYWOOD, individually and in his official capacity as an employee of Fairfax County Jail; DEPUTY BROWN, individually and in his official capacity as an employee of Fairfax County Jail; JOHN DOE, Sergeant, individually and in his official capacity as an employee of Fairfax County Jail,
Defendants.

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Leonie M. Brinkema, District Judge.
(CA-94-799-A)

Argued: March 4, 1996

Decided: June 6, 1996

Before MURNAGHAN and ERVIN, Circuit Judges, and YOUNG, Senior United States District Judge for the District of Maryland, sitting by designation.

_____

Affirmed in part and vacated and remanded in part by unpublished opinion. Judge Ervin wrote the opinion, in which Judge Murnaghan and Senior Judge Young joined.

_____

**COUNSEL**

**ARGUED:** William Arthur Beeton, Jr., Fairfax, Virginia, for Appellants. Robert S. Corish, SLENKER, BRANDT, JENNINGS & JOHN-

3

STON, Merrifield, Virginia, for Appellees. **ON BRIEF:** John J. Brandt, SLENKER, BRANDT, JENNINGS & JOHNSTON, Merrifield, Virginia, for Appellees.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

## OPINION

ERVIN, Circuit Judge:

On June 14, 1994, Defoe sued the Fairfax County, Virginia, Sheriff and seventeen of his deputies for alleged mistreatment in the Fairfax Adult Detention Center. He alleged violations of his constitutional rights to freedom: (1) "from cruel and unusual punishment," (2) "from the use of excessive and unreasonable force," (3)"from the deprivation of liberty and property without due process of law," (4) "from summary punishment," and (5) to exercise his religion. The district court granted four defendants' motions to dismiss on August 5, 1994, and granted summary judgment in favor of the remaining defendants on November 4, 1994. On December 22, 1994, the district court awarded the defendants attorneys' fees and costs from both Defoe and his counsel, William Beeton--from Defoe under§ 1988 and from Beeton under Fed. R. Civ. Pro. 11--for continuing to oppose summary judgment after receiving "definitive" discovery from the defendants. Defoe did not appeal the district court's summary judgment on the merits; he and Beeton challenge only the sanctions.

We find that the district court acted within its discretion in determining that sanctions were appropriate against both Defoe and Beeton. But it abused its discretion by failing to consider, in setting the amount of the Rule 11 sanction, the factors we enumerated in Brubaker v. City of Richmond, 943 F.2d 1363, 1374 (4th Cir. 1991). Thus we affirm both the sanction against Defoe and the decision to sanction Beeton, but we remand Beeton's sanction for recalculation.

4

I.

Federal subject matter jurisdiction is appropriate in this case under 28 U.S.C. §§ 1331, 1343(a)(3)-(4), 42 U.S.C.§§ 1983, 1988, and the First, Fifth, Eighth, and Fourteenth Amendments to the U.S. Constitution. Pendent state-law claims are included by supplemental jurisdiction. Appellate jurisdiction over the district court's final judgment is appropriate under 28 U.S.C. § 1291. The district court's decision to impose sanctions is reviewable only for abuse of discretion. Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 404 (1990) (addressing Rule 11), cited in In re Kunstler, 914 F.2d 505, 513 (4th Cir. 1990), cert. denied sub nom., Kunstler v. Britt, 499 U.S. 969 (1991); see Hutchinson v. Staton, 994 F.2d 1076, 1080-81 (4th Cir. 1993) (addressing § 1988).

II.

Defoe alleged in his complaint a lengthy series of abuses by the defendants, including:

* confiscating and tearing up a map that was on his wall;

* charging him with breaking a window when he banged on the door to report the destruction of the map;

* confining him to a cell without a mattress, toilet, or personal property;

* confining him for six days to a rubber cell without a toilet, while feeding him only bologna sandwiches;

* charging him with destruction of property;

* restraining him by four-point restraints;

* forcing him to shower in handcuffs and leg restraints;

* confiscating and destroying his personal property;

* female deputies stripping him and making fun of him;

5

* confining him to a cell without running water for two days;

* charging him with an infraction for knocking on his cell door to request a shower, phone call, and visit to the commissary;

* confining him to disciplinary segregation for 15 days, with his mattress removed for most of each day, for knocking on his cell door;

* Deputy Steinbeck confiscating and destroying as contraband a cardboard shoe box that another deputy had given him;

* Deputy Steinbeck replacing the box with a box top only when ordered to replace the box by Lt. Blain;

* confiscating Defoe's property again and placing him in another empty cell without a mattress or running water, and hog-tying and beating him when he banged on the cell door to request his property;

* restraining him face-down with only his underwear on;

* slamming their knees on the back of his head while changing restraints, and leaving him in restraints for over 20 hours at a time;

* throwing away his commissary request slip and, when he refused to return his breakfast tray in retaliation, macing, beating, and moving him to another cell where they placed him face-down on a steel plate in four-point restraints and threatened him;

* threatening his life physically and verbally on multiple occasions;

* denying him the right to have a Bible because of its potential use as a weapon;

* failing to provide medical care;

* detaining him in an overcrowded county jail even though he was sentenced to the state penitentiary.

Defoe offered no evidence to support his allegations. In response to the defendants' motion for summary judgment, he simply verified his complaint and his answers to defendant Peed's interrogatories.

Defoe's interrogatory answers were uniformly vague and arguably evasive. For example, he suggested in response to the second interrogatory that some of his allegations were based in part on information he received from other prisoners:

> 2. State with specificity and detail all facts which support your allegation in paragraph (1) of the Introduction to your complaint that "the Sheriff has tolerated and permitted a pattern of illegal beatings and deprivations of prisoners."

> Answer to Interrogatory No. 2:

> Plaintiff was subjected to more than one beating and deprivation and therefore it was a pattern that had been allowed to continue. Plaintiff had heard that other prisoners had suffered bad treatment.

Yet when asked to provide names of potential witnesses, lay or expert, or of anyone else who might have relevant information, Defoe identified no one other than himself and the defendants. Beeton never sought to depose the defendants or anyone else.

To support their motion for summary judgment, the defendants offered evidence from a multitude of sources including a housing log, thirteen affidavits, three "Forensic Interview" reports, an incident report, the Fairfax ADC's "Special Operation Procedures" for use of restraints and inmate housing, and Defoe's medical records. The defendants' evidence contradicts very few of the facts alleged by Defoe, but it shows clearly that incidents which Defoe characterized as abusive actually were measured responses to Defoe's extreme behavioral problems. For instance, Defoe complains of being confined to a cell without a toilet, but the evidence shows that the defendants took that step only after Defoe intentionally stopped up the toilet and flooded his cell. Similarly, the citation for breaking the glass in his cell door was issued only after Defoe broke the glass, cut

7

himself in the process, and used blood from his wound to write his name on the door. The district court accurately described the evidence as a

> litany of consistent horrors conducted by [Defoe] showing that he was completely out of control at numerous times. These officers, there are log entries showing that they were giving him his bedding, taking the bedding from him. I mean, they were going back and forth. I got a clear picture of them trying to work with him. They would note when he was calmer for a day or two; and as soon as he got calmed down, he got more of his privileges back.

> Then he would, you know, he would roar up again.

J.A. at 58-59.

III.

A.

We first address the district court's decision to sanction Beeton. The court ruled that Beeton violated Rule 11 by filing a motion in opposition to defendants' Motion for Summary Judgment:

> [T]here may have initially been justification for filing the lawsuit, although I think I'm giving you every benefit of the doubt in that respect, given the kind of discovery that was conducted and the final receipt on the 14th of what, I think, is definitive information that should have led a wise attorney to cut the losses at that point. I think it was wrong to continue at that point and put the county to the additional expenses of having to continue litigating this case. As you know, Rule 11 isn't just the initial filing. It's the continuing of the lawsuit when the evidence and sound judgment would lead one to evaluate it differently.

Beeton argues that the court abused its discretion by concluding that the complaint and answers to interrogatories, both of which Defoe

8

verified, were insufficient to support a reasonable attorney's decision to contest summary judgment.

Summary judgment is appropriate when the evidence before the court reveals "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. Pro. 56(c). A genuine issue of material fact exists if the evidence could lead reasonable people to different conclusions. Phoenix Savings & Loan, Inc. v. Aetna Casualty & Surety Co., 381 F.2d 245 (4th Cir. 1967). In determining whether a genuine issue exists, the court must draw all inferences in favor of the nonmoving party. Cole v. Cole, 633 F.2d 1083, 1090 (4th Cir. 1980). Summary judgment is inappropriate when resolution of the factual issue requires judgment of the credibility of witnesses, but a "mere scintilla" of evidence in favor of the nonmovant is insufficient to defeat a motion for summary judgment. Russell v. Microdyne Corp., 65 F.3d 1229, 1239 (4th Cir. 1995).

We need not examine the merits of the summary judgment to determine whether a sanction was appropriate. That a plaintiff presents insufficient evidence for a reasonable jury to rule in his favor does not indicate inexorably that his claim is frivolous. See Miltier v. Downes, 935 F.2d 660, 664 (4th Cir. 1991) ("The danger here is that the summary judgment analysis becomes the Rule 11 analysis.. . . [C]ounsel do not have to be right on their legal position to avoid sanctions, only reasonable."). However, neither is the ability to withstand a summary judgment motion sufficient to defeat a Rule 11 claim. Calloway v. Marvel Entertainment Group, 854 F.2d 1452, 1473 (2d Cir. 1988) ("Where baseless allegations are used to prevent summary judgment, sanctions are mandatory if the attorney did not make a reasonable pre-filing inquiry when he or she originally put forward the claim."), rev'd in part on unrelated ground sub nom., Pavelic & LeFlore v. Marvel Entertainment Group, 493 U.S. 120 (1989); Mann v. G & G Mfg., 900 F.2d 953, 960 (6th Cir. 1990) ("[A] denial of a motion for summary judgment does not preclude a grant of a motion for sanctions against the prevailing party."), cert. denied sub nom., Sloan v. G & G Mfg., 498 U.S. 959 (1990). Beeton may have believed reasonably that the verified complaint and interrogatory answers created a genuine issue of material fact. But Rule 11 imposes a duty on attorneys to investigate beyond the mere allegations of their clients, Blue

9

v. United States Dep't of the Army, 914 F.2d 525, 542 (4th Cir. 1990) ("Undoubtedly there are instances in which an attorney acts irresponsibly by failing to investigate the facts behind his client's claim and by instead relying solely on the client's testimony to support his case."), cert. denied sum nom., Chambers v. United States Dep't of the Army, 499 U.S. 959 (1991), and there is no indication that Beeton conducted a thorough investigation even after he received substantial evidence that appeared to undermine his client's story. Had he investigated and determined that there were no witnesses to the alleged events other than Defoe and the defendants, it might not have been improper for him to file suit and seek a jury determination of the parties' credibility. But the district court did not abuse its discretion by sanctioning him for relying on his client's naked assertions.

B.

Beeton also argues that the district court improperly determined the sanction's amount. The court abused its discretion, he contends, by failing to address four factors that we previously have mandated: (1) the reasonableness of the defendants' attorneys' fees, (2) the minimum sanction needed to deter the conduct, (3) the ability of Beeton to pay, and (4) the severity of the Rule 11 violation. See Brubaker v. City of Richmond, 943 F.2d 1363, 1374 (4th Cir. 1991) (following In re Kunstler, 914 F.2d 505, 523 (4th Cir. 1990)). We agree. The district court did not expressly consider any of the four factors, and even ignored an affidavit which stated that Beeton was bankrupt. Thus we remand the sanction for recalculation in accordance with our decision in Brubaker.

IV.

Defoe contends that the district court abused its discretion by sanctioning him under § 1988. He cites our holding in Hutchinson v. Staton that, under section 1988, "prevailing defendants should receive attorneys' fees only when the plaintiff's claim was `frivolous, unreasonable, or groundless,' or when `the plaintiff continued to litigate after it clearly became so.'" 994 F.2d at 1080 (quoting Christiansburg Garment Co. v. EEOC, 434 U.S. 412, 422 (1978)). Whether a claim is frivolous is to be determined by the district court, and is reviewable

only for abuse of discretion. <u>Christiansburg Garment Co.</u>, 434 U.S. at 421; <u>accord Hutchinson</u>, 994 F.2d at 1079-81.

Defoe focuses on the merits of his allegations, maintaining his position that they were well-grounded. But the defendants' evidence appears to undermine those allegations, and Defoe offered no evidence other than the bare allegations in documents that he verified only after the defendants had moved for summary judgment. In light of the defendants' ample evidence and Defoe's "mere scintilla," the district court's conclusion that the suit was frivolous was not an abuse of discretion.

V.

In light of the foregoing, we affirm the sanction against Defoe in its entirety, and affirm the finding that Beeton is liable for a sanction, but we vacate and remand the sanction against Beeton for a redetermination of its amount in accordance with <u>Brubaker</u>.

<u>AFFIRMED IN PART
AND VACATED AND REMANDED IN PART</u>

11