**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

FIRST AMERICAN BANK OF VIRGINIA,
Plaintiff-Appellee,

v.

CASSANDRA WILLIAMS, a/k/a
Cassandra G. Nelson, t/a Cultural
Associates,
Defendant-Appellant,

and

GLENDA BARNUM, Individually, d/b/a
MAPS Marketing Enterprise;
MELISSA PREJEAN, Individually, d/b/a
MAPS Marketing Enterprise;
DOROTHY CARRADINE, Individually,
d/b/a MAPS Marketing Enterprise;
MAPS MARKETING ENTERPRISE, a/k/a
MAP Enterprises, Incorporated,
Third Party Defendants.

No. 94-1744

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
Walter E. Black, Jr., Senior District Judge.
(CA-89-1341-B)

Argued: March 8, 1995

Decided: March 7, 1997

Before WILKINSON, Chief Judge, and WIDENER and
MICHAEL, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Richard L. Donald, Jr., Temple Hills, Maryland, for
Appellant. Daniel Stephen Fiore, II, Arlington, Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See
Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

This case arises out of a Bankcard Merchant Agreement between
First American Bank of Virginia and Cassandra Williams, doing busi-
ness as Cultural Associates. Miss Williams appeals the district court's
summary judgment dismissal of her counterclaim for defamation and
the district court's order reducing a jury award in her favor from
$26,000 to $1,530. Upon this third appeal in this case, we are of opin-
ion that the district court's orders are correct, and we therefore affirm
its judgment.

Miss Williams was sole proprietor of Cultural Associates, a busi-
ness primarily engaged in the sale of artwork created by Miss Wil-
liams' husband. On September 22, 1986, Miss Williams and First
American renewed a Bankcard Merchant Agreement. The agreement
provided that First American would maintain a bankcard merchant
account into which Miss Williams would deposit credit card slips rep-
resenting purchases by cardholders. First American would then credit
Miss Williams' account for the amount of the submitted drafts and
collect the amounts of those drafts from the bank which had issued
the credit card used in a given transaction. First American was also
entitled to assess Miss Williams a percentage of the value of each
transaction as a fee for processing the slips.

2

In April 1988, Miss Williams entered into a contract with Maps Marketing Enterprises, Inc. Maps Marketing sold vacation and travel discount club memberships to customers solicited over the telephone. Miss Williams agreed to submit to First American Maps Marketing's credit card slips reflecting orders Maps Marketing had obtained through telemarketing. Upon receiving provisional credit from First American, Miss Williams would pay to Maps Marketing the amount of the slips less a $30 charge per transaction.

Some of the Maps Marketing slips submitted by Miss Williams to First American were subsequently disputed by cardholders. The institutions which had issued the credit cards involved back-charged the disputed amounts to First American. First American claims that over $65,000 of Maps Marketing transactions have been back-charged to it. On May 5, 1988, after its discovery of Miss Williams' relationship with Maps Marketing, First American refused to credit Miss Williams for $25,015.20 in credit card slips, most of which represented Maps Marketing transactions. On May 6, First American terminated the merchant agreement and closed the merchant account. First American apparently later processed those May 5, 1988 sales drafts which had resulted from Miss Williams' own business.

First American filed suit against Miss Williams in May 1989, asserting claims against her for breach of contract, breach of warranties, restitution, and fraud and deceit. Miss Williams filed counterclaims against First American alleging breach of contract, defamation, intentional interference with contractual relations, accounting, and conversion.

First American moved for summary judgment against Miss Williams on all counterclaims. The district court granted summary judgment on the conversion counterclaim on June 11, 1990, and the defamation counterclaim on November 13, 1990. Miss Williams appealed the grant of summary judgment on her defamation claim to this court, which appeal was dismissed as interlocutory on December 3, 1991. Summary judgment was denied on the remaining counterclaims, and the case proceeded to jury trial. The jury awarded First American $22,914.71 on breach of contract and restitution. The jury found for Miss Williams on First American's breach of warranty and fraud and deceit claims. Miss Williams was awarded $6,000 on her

3

counterclaims of breach of contract and accounting, and $20,000 on her intentional interference with contractual relations counterclaim, upon which judgment was entered.

First American moved under Fed. R. Civ. P. 59(e) to have the judgment altered, and the district court granted the motion. Miss Williams' award was reduced from $26,000 to $1,530, and judgment was entered December 3, 1992. Miss Williams appealed the judgment to this court. After oral argument, this court vacated the judgment and remanded the case to the district court without an opinion on the merits. This court noted that the briefs and arguments were incomprehensible, the appendix deficient, and the record inadequate for just review.

On remand, the district court filed memorandum opinions on its grant of summary judgment on Miss Williams' counterclaim for defamation and its reduction of Miss Williams' award from $26,000 to $1,530. The district court then entered judgment in the same amount as entered on December 3, 1992. Miss Williams has again appealed.

Miss Williams raises two points on appeal. First, she argues that the district court erred in granting summary judgment in favor of First American on her counterclaim for defamation. We review the district court's grant of summary judgment on the defamation counterclaim de novo. Holland v. Rimmer, 25 F.3d 1251, 1254 (4th Cir. 1994). Miss Williams alleged that First American informed its own employees, the FBI, and customers of Maps Marketing that Cultural Associates was involved in fraudulent or unlawful activities. Miss Williams further alleged that the statements were false and damaged her reputation.

The parties have agreed that the laws of Virginia govern this dispute, and both rely on Gazette, Inc. v. Harris , 325 S.E.2d 713 (Va.), cert. denied, 472 U.S. 1032 (1985). In that case, the Court set out the elements of a claim such as this for defamation when brought by a private individual. To recover, plaintiff must show by a preponderance of the evidence that there was publication of a false statement, and that the defendant either knew it to be false, or believing it to be true, lacked reasonable grounds for such belief, or acted negligently in failing to ascertain the facts on which the publication was based.

4

325 S.E.2d at 724-25. The court noted that in such cases, the burden is on the plaintiff to prove the falsity of the publication. 325 S.E.2d at 725.

In support of her counterclaim, Miss Williams submitted affidavits and documentary evidence. Even if some of the statements contained in the supporting evidence could be construed as defamatory, we agree with the district court that Miss Williams did not offer sufficient evidence to withstand First American's motion for summary judgment. "The moving party is `entitled to judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." Celotex Corp. v. Catrett , 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). The district court correctly pointed out that Miss Williams did not offer evidence of the falsity of certain of the allegedly defamatory statements, an element of defamation under Virginia law. As to the other statements which might have contained defamatory matter, the district court correctly found that there had been no publication. We therefore affirm the grant of summary judgment to First American on Miss Williams' counterclaim for defamation.

Second, Miss Williams contends that the district court erred in reducing the jury verdict in her favor from $26,000 to $1,530. A motion to alter or amend a judgment may be granted if it accommodates an intervening change in controlling law, accounts for new evidence not available at trial, or corrects a clear error of law or prevents manifest injustice. Hutchinson v. Staton, 994 F.2d 1076, 1081 (4th Cir. 1993).

The jury in this case returned a verdict in favor of Miss Williams on her counterclaims for breach of contract and intentional interference with contractual relations in the total amount of $26,000. First American moved to have the award reduced, claiming that under the pretrial order, Miss Williams was limited to an award for loss of profits and that the evidence at trial established that Miss Williams would only have earned $1,530. After a hearing on the motion, the court granted First American's motion and reduced the jury award to $1,530. Miss Williams argues that she is entitled to the full amount of the jury award.

5

The pretrial order in this case limited Miss Williams' damages for loss of profits from March 1988 to May 5, 1988 for both the breach of contract claim and the intentional interference claim, and she is bound by the pretrial order. See Fed. R. Civ. P. 16(e).

We are of opinion that the reasoning of the district court's opinion is correct. Miss Williams only introduced evidence that First American refused to credit her for the May 5, 1988 deposit of $25,015.20 during the relevant time period. The evidence established that the $25,015.20 represented approximately 51 Maps Marketing transactions with a profit of $30 each. Because Miss Williams did not present any other evidence of loss of profits, she was entitled to only $1,530. The jury award of $26,000 was not supported by the record, which is a clear error of law. See Hutchinson , 994 F.2d at 1081.

The judgment of the district court is accordingly

AFFIRMED.

6