**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 07-1571**

CHARLIE NORFOLK CENTER ASSOCIATES, L.P.,

Plaintiff - Appellant,

v.

NORFOLK REDEVELOPMENT AND HOUSING AUTHORITY,

Defendant - Appellee.

Appeal from the United States District Court for the Eastern District of Virginia, at Norfolk. Jerome B. Friedman, District Judge. (2:06-cv-00616-JBF)

Argued: May 13, 2008                    Decided: July 1, 2008

Before KING, Circuit Judge, HAMILTON, Senior Circuit Judge, and Henry F. FLOYD, United States District Judge for the District of South Carolina, sitting by designation.

Affirmed by unpublished per curiam opinion.

**ARGUED:** Roger J. Magnuson, DORSEY & WHITNEY, LLP, Minneapolis, Minnesota, for Appellant. Conrad Moss Shumadine, WILLCOX & SAVAGE, PC, Norfolk, Virginia, for Appellee. **ON BRIEF:** David Y. Trevor, DORSEY & WHITNEY, LLP, Minneapolis, Minnesota, for Appellant. David H. Sump, Elaine K. Inman, CRENSHAW, WARE & MARTIN, PLC, Norfolk, Virginia; Brett A. Spain, WILLCOX & SAVAGE, PC, Norfolk, Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Plaintiff Charlie Norfolk Center Associates, L.P. ("CNC"), appeals from the final judgment entered in the Eastern District of Virginia on its breach of contract claims against defendant Norfolk Redevelopment and Housing Authority (the "NRHA"). See Charlie Norfolk Ctr. Assocs., L.P. v. Norfolk Redev. & Hous. Auth., No. 2:06-cv-00616 (E.D. Va. Mar. 26, 2007) (granting summary judgment to NRHA under Federal Rule of Civil Procedure 56(c)) (the "Summary Judgment Order"); Charlie Norfolk Ctr. Assocs., L.P. v. Norfolk Redev. & Hous. Auth., No. 2:06-cv-00616 (E.D. Va. May 18, 2007) (denying CNC's motion to amend judgment under Rule 59(e)) (the "Rule 59(e) Order").[1]  On appeal, CNC contends that the district court erred in three respects in making its summary judgment award: failing to recognize that (1) the NRHA breached its obligations under an Option Agreement when it rejected CNC's proposed development plan without negotiating alterations to the plan; (2) the NRHA breached its obligations by unreasonably rejecting CNC's preliminary plans for property development; and (3) the NRHA prevented and delayed CNC's submission of an acceptable development plan.  CNC contends that the court thereafter abused its discretion in the Rule 59(e) Order by declining to vacate the summary judgment

---

[1]The Summary Judgment Order is found at J.A. 144-64, and the Rule 59(e) Order is found at J.A. 1195-1209.  (Citations to "J.A. __" refer to the contents of the Joint Appendix filed by the parties in this appeal.)

2

award and failing to authorize discovery. As explained below, we have carefully assessed these contentions and are satisfied that the judgment in favor of the NRHA should be affirmed.

I.

The NRHA is a political subdivision of the Commonwealth of Virginia, charged with overseeing the redevelopment of blighted urban areas in Norfolk pursuant to a redevelopment plan adopted by the NRHA and approved by the City (the "Redevelopment Plan"). The NRHA is authorized to promote redevelopment by making blighted real estate available for purchase by private parties for purposes designated in the Redevelopment Plan. See Va. Code Ann. § 36-53. On June 5, 1996, the NRHA entered into an agreement with CNC, a Connecticut-based real estate developer, that granted CNC an option to purchase, for the sum of $1.6 million, a 2.46 acre parcel of real estate in downtown Norfolk (the "Option Agreement" or "Agreement").[2] The real estate parcel (the "Property"), which was then being used as a surface parking lot, is located adjacent to the MacArthur Center, a large shopping mall that had been developed primarily by CNC. Under the terms of the Option Agreement, CNC had the exclusive right to purchase the Property from the NRHA under specified conditions, which included the following:

---

[2]The Option Agreement is found at J.A. 85-98.

3

- CNC was to notify the NRHA in writing, prior to termination of the Option Agreement, of its intent to exercise the purchase option, see Option Agreement 2;

- Within 60 days of notifying the NRHA of its intent to exercise the purchase option, CNC was to identify its objections to title, and conduct any necessary soil or engineering tests on the Property, see id. at 2-3; and,

- CNC was required to submit and obtain the NRHA's approval of a plan for developing the Property, showing, inter alia, (1) the intended use of the Property, "which must be for retail, residential, hotel or office use, or any use permitted under [s]ection [1.B.]1.a.(3)(c) of the [NRHA]'s Redevelopment Plan," and (2) "the specific use or uses proposed to be constructed on the [site] in sufficient detail to show . . . all improvements, a plan view and elevation of the improvements, the materials to be used in the external facades, the provision for on-site parking (if any) and the approximate gross floor plan." Id. at 7.[3]

Under the Option Agreement, the NRHA agreed that it would not otherwise sell, offer, or agree to sell the Property during the option period. The NRHA also agreed to "consider in good faith any [d]evelopment [p]lan for the Property submitted by [CNC] and to suggest such reasonable changes to plans submitted by [CNC] as may be necessary for [the NRHA] to give its approval." Option

---

[3]Pursuant to section 1.B.1.a.(3)(c) of the Redevelopment Plan, entitled "Other Permitted Uses," "land within the Project Area which is not devoted to public uses, semi-public uses, existing private uses or the proposed regional shopping mall may be used for commercial, office, retail or transient housing uses, either singly or by a combination of such uses." J.A. 124. This section further provides that "[p]ublic uses, such as public parking garages and accessways, can be constructed within areas which are designated for redevelopment by private enterprise." Id.

4

Agreement 7-8.  Accordingly, the NRHA could not unreasonably withhold its approval of a development proposal for the Property submitted by CNC.  See id. at 8.

In November 2000, CNC met with the NRHA and the Mayor of Norfolk to discuss a preliminary mixed-use plan for the Property (to be called "Norfolk Place").  In an effort to make such a plan acceptable, CNC, among other things, identified potential tenants and prepared architectural designs for the Norfolk Place project. It failed, however, to submit a formal development plan proposing any such project.

On May 25, 2001, CNC notified the NRHA of its intent to exercise the purchase option.  On November 13, 2001, CNC submitted a formal development plan to the NRHA reflecting that its intention was to continue using the Property as a surface parking lot.  This plan consisted only of a single aerial photograph of the Property, marked to show the intended restriping of the lot's parking spaces and placement of a 300-foot long chain across the lot.  Two days later, CNC submitted a revised development plan to the NRHA, consisting of a photograph identical to the one initially submitted, but failing to show the proposed restriping of the lot (the "Development Plan" or "Plan").  By letter of November 21, 2001, the NRHA rejected the Development Plan as "woefully inadequate," explaining that surface parking — in the absence of major on-site improvements — was not a valid use of the Property

5

under the Option Agreement, which expressly incorporated by its terms section 1.B.1.a(3)(c) of the Redevelopment Plan. The NRHA thus advised CNC that its Development Plan failed to satisfy the requirements of the Agreement. <u>See</u> J.A. 138. The Option Agreement expired on November 21, 2001, and, until sometime in 2006, the Property continued to be owned by the NRHA.

Almost five years after the Option Agreement expired, on October 31, 2006, CNC filed a complaint in the Eastern District of Virginia, alleging that it had satisfied all conditions precedent to the exercise of its purchase option on the Property. It also alleged that the NRHA had breached the Option Agreement in three respects: (1) by failing to act in good faith in considering the Development Plan; (2) by offering the Property for sale to other prospective purchasers; and (3) by hindering CNC's completion of the Development Plan (because, for instance, the NRHA desired a more substantial development of the Property). On December 11, 2006, the NRHA moved to dismiss CNC's complaint for failure to state a claim, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. On January 5, 2007, CNC filed its opposition to such a dismissal, requesting instead that the court authorize discovery pursuant to Rule 56(f).[4] The district court, by its

---

[4]Rule 56(f) provides that "[i]f a party opposing [a summary judgment] motion shows by affidavit that, for specified reasons, it cannot present facts essential to justify its opposition, the court <u>may</u>[, inter alia,] deny the motion." Fed. R. Civ. P. 56(f) (emphasis added).

Summary Judgment Order of March 26, 2007, construed the motion to dismiss as a motion for summary judgment (under the operative version of Rule 12), and granted summary judgment to the NRHA.[5]

On April 9, 2007, CNC filed a motion to alter or amend judgment, pursuant to Rule 59(e),[6] asserting three grounds: (1) that new evidence (in the form of, for example, deposition testimony that the "such as" language in section 1.B.1.a.(3)(c) was illustrative, rather than exclusive) showed that the summary judgment award had been improperly granted; (2) that the Summary Judgment Order erroneously concluded that the Development Plan failed to satisfy the requirements of the Option Agreement; and (3) that the "prevention doctrine" was inapplicable to the NRHA.[7] CNC also contended in its Rule 59(e) motion that the court had erred in

---

[5]Rule 12 was recently amended, effective December 1, 2007, as part of the general restyling of the Civil Rules. The operative version of Rule 12 provided in subsection (b) that "[i]f, on a motion [under Rule 12(b)(6),] matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56."

[6]Pursuant to Rule 59(e), a court may amend an earlier judgment on three grounds: (1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice. See Hutchinson v. Staton, 994 F.2d 1076, 1081 (4th Cir. 1993).

[7]Under the so-called "prevention doctrine," a condition precedent to a contract is excused when the promisor prevents or hinders the occurrence of the condition, and the condition would have occurred in the absence of such prevention or hindrance. See In Re Peanut Crop Ins. Litigation, 524 F.3d 458, 474 (4th Cir. 2008).

denying CNC discovery under Rule 56(f). On May 18, 2007, the district court, by its Rule 59(e) Order, denied the motion to alter or amend judgment. The court concluded therein that CNC had failed to present any evidence that was unavailable when the Summary Judgment Order was entered, and that CNC had otherwise failed to show that the court had made any clear legal error. CNC has filed a timely appeal, and we possess jurisdiction pursuant to 28 U.S.C. § 1291.

II.

We review de novo a district court's award of summary judgment, viewing the facts in the light most favorable to the non-moving party. See Lee v. York County Sch. Div., 484 F.3d 687, 693 (4th Cir. 2007). An award of summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed R. Civ. P. 56(c); see also Lee, 484 F.3d at 693. We review for abuse of discretion the denial of a Rule 59(e) motion to alter or amend judgment. See Temkin v. Frederick County Comm'rs, 945 F.2d 716, 724 (4th Cir. 1991). Finally, we also review for abuse of discretion a district court's denial of a Rule 56(f) motion for discovery. See Ingle v. Yelton, 439 F.3d 191, 195 (4th Cir. 2006).

III.

CNC contends on appeal that the Summary Judgment Order should be vacated for three reasons: (1) the NRHA breached its obligations under the Option Agreement by rejecting CNC's Development Plan and failing to negotiate with CNC concerning alterations to the Plan; (2) the NRHA breached its contract obligations by unreasonably rejecting CNC's preliminary plans for developing the Property; and (3) the NRHA prevented and delayed CNC's submission of the Development Plan. CNC also maintains that the court abused its discretion in the Rule 59(e) Order by refusing to recognize new evidence and the Summary Judgment Order's clear legal error, and also in denying CNC's request for discovery pursuant to Rule 56(f). We address these contentions in turn.

A.

1.

CNC's first contention on appeal is that the NRHA was not entitled to summary judgment because it breached the Option Agreement in rejecting CNC's Development Plan, without suggesting reasonable changes or revisions that could have made the Plan acceptable. As noted, the Agreement mandated that the NRHA consider in good faith any development plan submitted by CNC and suggest reasonable changes to such a plan that might result in the NRHA's approval. Further, the Agreement stipulated that the NRHA could not unreasonably withhold, delay, or deny approval of

proposed development plans.  The district court determined that the NRHA did not contravene its obligations under the Agreement in rejecting the Development Plan, because CNC's contract rights had never vested due to its failure to submit a development plan that conformed to the threshold requirements of the Agreement.  See Summary Judgment Order 18.

In reviewing the permitted uses spelled out in the Option Agreement, and the incorporated section 1.B.1.a.(3)(c) of the Redevelopment Plan, the district court concluded that CNC's proposed Development Plan failed to pass muster because "surface parking was not an appropriate or permitted use of the [P]roperty." Summary Judgment Order 9.  In so ruling, the court explained that the only provision of the Redevelopment Plan that referenced and authorized the use of redevelopment property for surface parking was not incorporated into the Agreement, reinforcing its conclusion that surface parking was not a permitted use under the Agreement. See Summary Judgment Order 8-9.

The district court further observed that the Agreement mandated that a permissible development plan must contain "a showing of the approximate gross floor area, indicating that the type of development contemplated was a building, [rather than simply] a surface parking lot." Summary Judgment Order 10.  CNC's Development Plan (consisting of an aerial photograph showing a single chain stretching across the Property), however, failed to

10

contain any such descriptions of improvements, external facades, and gross floor area, as mandated by the Option Agreement. According to the court, because CNC's Development Plan did not conform to the Agreement, the NRHA "acted in good faith in rejecting the plan and did not unreasonably deny its approval." Summary Judgment Order 18. Having carefully considered this issue, we are satisfied to adopt the district court's reasoning as our own. See id. at 7-10.

2.

CNC's second contention is that the NRHA breached its contractual obligations under the Option Agreement by unreasonably rejecting the preliminary plans that CNC had raised (prior to submission of its Development Plan) to construct a mixed-use development on the Property. In this regard, CNC asserts that the City of Norfolk's Mayor had communicated to CNC that he would not approve the particular commercial tenants proposed by CNC for Norfolk Place. CNC acknowledges in its appellate brief, however, that the NRHA's approval of development plans was not contingent on any tenant placement or approval. See Br. of Appellant 10-11. On appeal, CNC maintains that the NRHA was obligated, pursuant to the Option Agreement, to provide feedback on preliminary plans, and that the NRHA breached the Agreement by failing to provide any such feedback. As the district court recognized, however, CNC stopped short of actually submitting a plan that satisfied the conditions

11

precedent provided for in the Agreement. Because of CNC's failure to submit any formal development proposals to the NRHA prior to submitting its surface parking plan, the NRHA "was not required to begin an interactive negotiation process with [CNC] with regard to any previously submitted 'plans,' whether or not they constituted '[d]evelopment [p]lans.'" Rule 59(e) Order 13-14. Under the circumstances, we agree with the district court and reject this contention as well.

3.

CNC's third contention on appeal is that the NRHA prevented CNC from submitting a conforming development plan by, inter alia, denying CNC's engineers access to the Property to conduct tests; failing to resolve deficiencies uncovered by such tests; and repeatedly rejecting CNC's preliminary proposals for development and failing to raise objections when CNC first notified the NRHA that it would be submitting a development plan for surface parking. According to CNC, the NRHA, by its preventive actions, waived CNC's contractual obligation to obtain approval of a development plan before exercising its purchase option under the Agreement. The district court rejected this contention, however, reasoning that the NRHA acts in a governmental capacity when it makes redevelopment property available for private purchase under section 36-53 of the Code of Virginia, and is therefore not subject to the prevention doctrine or other similar concepts such as waiver and

12

estoppel.  See Summary Judgment Order 13.[8]  Finally, the court concluded that, "even were [CNC] able to assert the prevention doctrine against the [NRHA (by the NRHA acting in a non-governmental capacity)], [CNC] would be unable to succeed on that basis, as it was in fact not prevented from submitting a valid development plan."  Id.  We also agree with the district court on this point, and we are content to reject it on the reasoning of the Summary Judgment Order.

## B.

After the Summary Judgment Order was entered, CNC moved to alter or amend the judgment pursuant to Rule 59(e), contending that new evidence showed that summary judgment had been improperly awarded.  CNC also asserted that the district court had erred in concluding that the Development Plan failed to satisfy the requirements of the Option Agreement, and in ruling that the prevention doctrine did not apply to the NRHA.  Finally, CNC maintained that the court erred in denying discovery pursuant to Rule 56(f).  In its Rule 59(e) Order of May 18, 2007, the court ruled that the "new evidence" CNC sought to present was in fact available when CNC initially responded in the district court, and

---

[8]In its Summary Judgment Order, the district court ruled that the NRHA is bound, under section 36-53 of the Virginia Code, to "condition the sale or lease of land on the obligation of purchasers or lessees to use it for a designated purpose, begin work on improvements within a fixed period of time, and comply with other conditions."  Summary Judgment Order 13.

also was "insufficient to cause the court to reevaluate its decision." Rule 59(e) Order 4. After considering CNC's contentions, the court reaffirmed the ruling in its Summary Judgment Order and concluded (1) that CNC had failed to satisfy the necessary conditions precedent for a transfer of the Property, and (2) that the NRHA was not subject to the prevention doctrine under Virginia law. Accordingly, the court ruled that discovery was neither warranted nor necessary, and denied CNC's Rule 59(e) motion. See id. at 14. Having thoroughly assessed each of the contentions presented with respect to the Rule 59(e) Order, it is clear that the court did not abuse its discretion in declining to alter or rescind its Summary Judgment Order.

IV.

Pursuant to the foregoing, we are satisfied to adopt as our own the reasoning of the Summary Judgment Order, as well as that of the Rule 59(e) Order, and thus affirm the judgment of the district court.

AFFIRMED

14