BEVERLY ENTERPRISES, INC. and Donald L. Dotson, Plaintiffs,

v.

Rosemary TRUMP and the Service Employees International Union, Local 585, Defendants.

Civil Action No. 97–1490.

United States District Court, W.D. Pennsylvania.

March 5, 1998.

Joseph J. Bosick, Pietragallo, Bosick & Gordon, Pittsburgh, PA, Fred W. Whatley, Kenneth A. Zirm, Walter & Haverfield, Michael T. McMenamin, Walter & Haverfield, Cleveland, OH, for Plaintiffs.

Claudia Davidson, Healey, Davidson & Hornack, Pittsburgh, PA, Craig Becker, SEIU, Chicago, IL, for Defendants.

_____

## MEMORANDUM

LANCASTER, District Judge.

This is an action in defamation. Plaintiffs, Beverly Enterprises Inc. ("Beverly"), and its Senior Vice–President for Labor and Employment, Donald L. Dodson, allege that defendant, Rosemary Trump, defamed them on two separate occasions: first, at a political rally for the Dole–Kemp presidential campaign; and second, at a Town Hall meeting at the Allegheny County Courthouse. Plaintiffs seek money damages.

Defendants have filed a motion to dismiss under Fed.R.Civ.P. 12(b)(6). Defendants contend that the statements Ms. Trump allegedly made at the Dole–Kemp rally are, as a matter of law, incapable of defamatory meaning. They further contend that the statements she made at the Town Hall meeting enjoy absolute testimonial immunity.

For the reasons that follow, the motion will be granted.

### I. STANDARD OF REVIEW

When the court considers a Rule 12(b)(6) motion to dismiss, the issue is not whether the plaintiff will prevail in the end or whether recovery appears to be unlikely or even remote. The issue is limited to whether, when viewed in the light most favorable to the plaintiff, and with all well-pleaded factual allegations taken as true, the complaint states any valid claim for relief. *See ALA, Inc. v. CCAIR, Inc.,* 29 F.3d 855, 859 (3d Cir.1994).

In deciding a 12(b)(6) motion to dismiss, courts consider the allegations contained in the complaint, exhibits attached to the complaint, and matters of public record. *See* 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357 n. 40. A court may also consider any irrefutably authentic documents that a defendant attaches as an exhibit to the motion to dismiss if the plaintiff's claim is based in whole or in part on the documents. *See Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.,* 998 F.2d 1192, 1196 (3d Cir.1993).

Accordingly, in deciding defendants' motion, the court has considered, in addition to plaintiffs' complaint, a copy of the Federal Procurement and Assistance Integrity Act ("HR 1624"). The court has also considered a video-tape of the May, 1997, Town Hall meeting at which Ms. Trump is alleged to have made some of the defamatory statements on which plaintiffs' claim is based. Both of these items were attached to the motion to dismiss.

### II. DISCUSSION

#### A. The Dole–Kemp Rally

These defamation claims stem from a long-standing acrimonious labor dispute between Beverly, the nation's largest private provider of nursing home care, and the Service Employees International Union ("SEIU"), whose local affiliates represent a substantial number of Beverly's employees. Rosemary Trump is the president of Local 585 of the SEIU. The dispute has led to a series of strikes, lockouts, and the filing of charges and counter charges of unfair labor practices with the National Labor Relations Board.

**492**

Defendants contend that the statements Ms. Trump allegedly made at a Dole–Kemp rally were uttered in the midst of the labor dispute, were mere rhetorical insults not to be taken literally, and are not actionable as defamation. The court agrees.

■ In a defamation claim, the court must first determine, as a matter of law, whether the publication is capable of defamatory meaning. *See Thomas Merton Center v. Rockwell Int'l Corp.*, 497 Pa. 460, 442 A.2d 213, 215–16 (1981). The burden is on the complaining party to establish that the publication being challenged is defamatory. If the court concludes that the publication is not capable of defamatory meaning, the case will be dismissed. *See MacElree v. Philadelphia Newspapers, Inc.*, 544 Pa. 117, 674 A.2d 1050, 1053 (1996).

■ Pertinent here, is that the courts recognize that there is a difference between defamatory statements, which are actionable in tort, and mere obscenities, insults, or other verbal abuse, which are not. *See Kryeski v. Schott Glass Tech.*, 426 Pa.Super. 105, 626 A.2d 595, 601 (1993). The courts generally consider insults, uttered face-to-face in anger, to be incapable of defamatory meaning. Indeed:

> There are some statements that are in form statements of opinion, or even of fact, which cannot reasonably be understood to be meant literally and seriously and are obviously mere vituperation and abuse. A certain amount of name-calling is frequently resorted to by angry people without any real intent to make a defamatory assertion, and it is properly understood by reasonable listeners to amount to nothing more. This is true particularly when it is obvious that the speaker has lost his temper and is merely giving vent to insult.

Restatement (Second) of Torts § 566 cmt. e (1976). This is particularly true in cases where the insults were uttered in the midst of an acrimonious labor dispute. *See Old Dominion Branch No. 496 Nat'l Ass'n of Letter Carriers v. Austin*, 418 U.S. 264, 268,

94 S.Ct. 2770, 41 L.Ed.2d 745 (1974) (not defamation to refer to non-union worker as "scab," and to characterize him, among other things, as a "traitor to his God, his country, his family, and his class"); *Crawford v. United Steelworkers*, 230 Va. 217, 335 S.E.2d 828, 839 (1985) (not defamation to refer to management as "cocksucker" and "motherfucker"); *Yeager v. Local Union 20*, 6 Ohio St.3d 369, 453 N.E.2d 666, 667, 669 (1983) (not defamation to refer to employer as a "Little Hitler" operating a "Nazi concentration camp").

■ In this case, the parties agree that the Dole–Kemp rally was held in the midst of the ongoing and long-standing acrimonious labor dispute between Beverly and the SEIU. Further, accepting plaintiffs' allegations as true, Ms. Trump, without provocation, angrily confronted Mr. Dodson at the rally. The confrontation escalated to the point where she shouted insults at Mr. Dodson and accused him of being a criminal by saying, "You people at Beverly are all criminals." She then accused Dodson of "devoting [his] entire career to busting unions." Finally, she shouted at Dodson, "I know your kind. You're just part of that World War II generation that danced on the graves of Jews."

■ We need not dwell on this issue at length. Ms. Trump's statements, distasteful as they were, were mere hyperbole and insulting rhetoric that are unfortunately commonplace in labor disputes. It is unreasonable, within the context of the labor dispute, to find that any person would have understood that these statements were to be taken literally.[1] The statements made by Ms. Trump at the Dole–Kemp rally, in the context of their publication, rise no higher than rhetorical hyperbole uttered in the heat of anger and stemming from an ongoing labor dispute. They are incapable of defamatory meaning as a matter of law.

**B. *The Town Hall Meeting***

Defendants also move to dismiss plaintiffs' claim with respect to statements that Ms.

---

**1.** If we accept that Ms. Trump plainly accused Dodson of being anti-Semitic, the Pennsylvania courts have been consistent in holding that an allegation of bigotry is, without more, not actionable in defamation. Plaintiffs' reliance on the obvious dicta in *MacElree* does not support their claim. *See* 674 A.2d at 1055 (Cappy, J., concurring).

Trump made at the May, 1997, Town Hall meeting. Defendants contend that her statements enjoy absolute testimonial immunity. The dispositive issue the court must decide is whether the Town Hall meeting was a "legislative proceeding" within the meaning of the Restatement (Second) of Torts § 590A (1976). The court concludes that it was.

■ Plaintiffs' defamation claim is based on Pennsylvania law; therefore, we look to Pennsylvania law to determine whether defendants' immunity defense is valid. *See Lunderstadt v. Colafella*, 885 F.2d 66, 74 (3d Cir.1989). Pennsylvania has adopted section 590A of the Restatement (Second) of Torts as its common law. *See Jennings v. Cronin*, 256 Pa.Super. 398, 389 A.2d 1183 (1978). That section provides, "A witness is absolutely privileged to publish defamatory matter as part of a legislative proceeding in which he is testifying or in communications preliminary to the proceeding, if the matter has some relation to the proceeding." *Id.* 389 A.2d at 1185. This testimonial immunity is absolute and similar in all respects to that afforded a witness in a judicial proceeding. *See id.;* Restatement (Second) of Torts § 590A cmt. a (1976).

■ The purpose of affording absolute immunity to witnesses who appear before a legislative proceeding is to permit the witnesses to give their legislators fully candid testimony regarding the advisability of proposed legislation. The immunity permits them to do so without the inhibiting or chilling effect that the threat of being hauled into civil court on a defamation suit would pose. The value of the privilege to our representative form of government is obvious, necessary, and substantial.

■ What constitutes a legislative proceeding, however, is not clearly defined. What is clear, however, is that a legislative proceeding is not limited to those proceedings that embody the formal speech and debate on proposed legislation that is held on the floor of the legislative chamber. *See Lunderstadt*, 885 F.2d at 73 ("Legislative immunity is not limited to words spoken in legislative sessions."). Nor is a legislative proceeding limited to an official hearing called by a legislative body, or by duly formed committees of that body, where witnesses are compelled to appear and testify under oath. *See Yip v. Pagano*, 606 F.Supp. 1566, 1570 (D.N.J.1985) (citing authority).

Neither the Supreme Court of Pennsylvania nor the Court of Appeals for the Third Circuit has directly ruled on what constitutes a "legislative proceeding." We find, however, some guidance in the court of appeals' decision in *Government of the Virgin Islands v. Lee*, 775 F.2d 514 (3d Cir.1985). In *Lee*, the court of appeals held that informal investigative fact-finding is included within the type of activity protected by legislative immunity. *See id.* at 520–22. In so holding, the court of appeals made clear that "fact-finding, information gathering, and investigative activities are essential prerequisites to the drafting of bills and the enlightened debate over proposed legislation. As such, fact-finding occupies a position of sufficient importance in the legislative process to justify the protection afforded by legislative immunity." *Id.* at 521. Although *Lee* was based on a specific statute that afforded immunity to the Virgin Islands' legislators, the court's reasoning is instructive in this case. *See also Eastland v. U.S. Servicemen's Fund*, 421 U.S. 491, 504, 95 S.Ct. 1813, 44 L.Ed.2d 324 (1975) (noting that the power to investigate falls within the legislative sphere and is protected).

■ After a review of the applicable authorities, the court holds that the definition of a legislative proceeding is broad enough to encompass proceedings—including informal fact-finding, information gathering, or investigative activities—that are conducted by legislators with the objective purpose of aiding the legislators in the drafting, debating, or adopting of proposed legislation.

■ In this case, the Town Hall meeting was held in the Allegheny County Courthouse. The stated purpose of the meeting was to allow the local members of Congress to hear testimony regarding the utility of HR 1624, which was then pending before the United States Congress, and how adoption of

HR 1624 might affect Beverly's operations.[2] Indeed, Representative William J. Coyne opened the meeting by referring to it as a "field hearing" and stated, "This hearing should provide us with a better understanding of the nature and magnitude of the problem, as well as the best options for dealing with federal contractors who have long histories of violating federal labor and workplace safety laws."

Representative Lane Evans, who drafted HR 1624, presided at the Town Hall meeting. In addition to Representative Evans, the congressional panel consisted of Representatives William J. Coyne, Michael F. Doyle, Frank Mascara, and Ronald Klink, all of whom were co-sponsors of HR 1624. United States Senator Arlen Spector also attended a portion of the meeting.

Thirteen individuals were invited to speak before the panel. The speakers included, among others, labor leaders, workers, attorneys, and educators. In accordance with the meeting's general format, each of the congressmen made an opening statement regarding the scope and intent of HR 1624. Each of the witnesses then gave prepared remarks, and thereafter, responded to specific questions from the congressional panel.

We have considered each of plaintiffs' arguments regarding the immunity issue. Moreover, we accept as true plaintiffs' averment that the Town Hall meeting was not a meeting of the congressional committee that was assigned the task of considering HR 1624. We also accept as true that none of the congressmen in attendance were members of the assigned committee. We find, however, that these averments are immaterial to the immunity issue, and are therefore insufficient to withstand defendants' motion to dismiss.

Nor is the court persuaded by plaintiffs' contention that Fed.R.Civ.P. 12(b)(6) dictates that the court accept as true the averment made in plaintiffs' complaint that the Town Hall meeting was not a legislative proceeding. Rule 12(b)(6) obligates the court to accept as true plaintiffs' averments of fact, but the court is not obligated to adopt plaintiffs' conclusions of law. Whether the Town Hall meeting was a legislative proceeding within the meaning of section 590A is a question of law; thus, plaintiffs' averment enjoys no presumption of validity.

The court is satisfied that the Town Hall meeting was a legislative proceeding within the meaning of section 590A of the Restatement. The court is also satisfied that Ms. Trump's statements were made as a part of that legislative proceeding. She was one of the thirteen individuals who were invited to speak before the congressional panel. She gave a statement and then answered questions from the panel. The statement that plaintiffs find objectionable was clearly relevant to the stated purpose of the meeting; indeed, it was made in direct response to a question posed by Representative Klink.

Moreover, contrary to plaintiffs' contention, it does not matter whether Ms. Trump had a subjective sinister motive for taking part in the Town Hall meeting. Testimonial immunity is absolute, it stands even if the witness acted in bad faith, or with a corrupt motive. *See Lunderstadt,* 885 F.2d at 74 (noting that statements made with an unworthy purpose in a legislative proceeding do not destroy legislative immunity and that courts are not the proper place to sort out controversies surrounding dishonest or vindictive motives attributed to legislative conduct).

## III. CONCLUSION

The motion to dismiss will be granted.

---

**2.** HR 1624, if adopted, would authorize the Secretary of Labor to suspend or debar a business from being awarded a procurement contract with the federal government if it were determined that the business had violated, among other provisions, the National Labor Relations Act, 29 U.S.C. § 151 *et seq.*