## SIRIWAT SINGHAVIROJ *v.* BOARD OF EDUCATION OF THE TOWN OF FAIRFIELD ET AL.
## (SC 18604)

Rogers, C. J., and Norcott, Palmer, Zarella, McLachlan and Eveleigh, Js.

Argued December 6, 2010—officially released May 17, 2011

*John T. Bochanis*, for the appellant (plaintiff).

*Michael J. Rose,* with whom were *Rachel Ginsburg* and, on the brief, *Johanna G. Zelman,* for the appellees (defendants).

### Opinion

PALMER, J. Under 42 U.S.C. § 1988 (b),[1] a trial court, in its discretion, may award attorney's fees to the prevailing defendant in an action brought pursuant to 42 U.S.C. § 1983[2] if the court finds that the action was "frivolous, unreasonable or groundless, or that the plaintiff continued to litigate it after it clearly became so." (Internal quotation marks omitted.) *Hughes* v. *Rowe,* 449 U.S. 5, 14–15, 101 S. Ct. 173, 66 L. Ed. 2d 163 (1980). The plaintiff, Siriwat Singhaviroj, appeals[3] from the order of the trial court granting the postjudgment motion of the defendants, the town of Fairfield (town), the town's board of education (board), Howard Zwickler, the board's business director, and Margaret Mary Fitzgerald, the board's assistant superintendent for human relations, for attorney's fees pursuant to 42 U.S.C. § 1988 (b). The plaintiff claims that the trial court abused its discretion in awarding the defendants $3000 in attorney's fees predicated upon its finding that the plaintiff had continued to litigate his claims against the defendants after it became clear that those claims were

[1] Section 1988 (b) of title 42 of the United States Code provides in relevant part: "In any action or proceeding to enforce a provision of [section] . . . 1983 . . . the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs . . . ."

[2] Section 1983 of title 42 of the United States Code provides in relevant part: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . ."

[3] The plaintiff appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

groundless. We disagree and, accordingly, affirm the decision of the trial court.

The following facts and procedural history are relevant to our disposition of the plaintiff's claim. In April, 2004, the plaintiff was terminated from his employment as a senior field engineer in the board's information technology department after the board had determined that the plaintiff was responsible for disruptions in its computer network. On February 2, 2005, the plaintiff commenced this action against the defendants seeking redress for his termination, alleging in relevant part as follows. In May, 2003, the board initiated an investigation into disruptions of its computer network. On or about August 20, 2003, after the investigation had been completed, the board advised the plaintiff that if he did not resign, he would be terminated for failing to adequately explain the disruptions. The plaintiff objected to the board's ultimatum, asserting that the board had not provided him with adequate notice and an opportunity to respond to the allegations against him. On September 22, 2003, the board notified the plaintiff by letter that his termination was under consideration and that a hearing would be conducted at which he would have the opportunity to be heard on the allegations against him. The plaintiff ultimately was terminated, following a hearing, on or about April 8, 2004.

In the first count of his complaint, which was brought under 42 U.S.C. § 1983, the plaintiff claimed that his termination violated his rights under the due process and equal protection clauses of the federal constitution. In support of this claim, the plaintiff maintained that the board had: (1) failed to provide him with reasonable notice of the charges and the evidence against him; (2) failed to afford him a fair hearing before an impartial fact finder; and (3) made the decision to terminate his employment prior to the termination hearing and without an adequate investigation. In the second count of

the complaint, the plaintiff sought indemnification from the town under General Statutes § 7-465.[4]

On April 11, 2005, the defendants filed a motion to strike the complaint on the ground that it failed to state a claim upon which relief could be granted. In support of their motion, the defendants asserted that the plaintiff's due process claim was insufficient as a matter of law because the plaintiff had not alleged, as required under *Board of Education* v. *Loudermill,* 470 U.S. 532, 538, 105 S. Ct. 1487, 84 L. Ed. 2d 494 (1985), that he had a property interest in his continued employment with the board that constitutionally entitled him to notice and a hearing before he could be terminated. The defendants further maintained that the plaintiff's equal protection claim failed as a matter of law because the plaintiff had not alleged the necessary factual predicate of such a claim, namely, that he had been treated differently from other similarly situated employees on the basis of impermissible considerations.

In his opposition to the defendants' motion to strike, the plaintiff responded that, with respect to his due process claim, he was not required to allege that he had a property interest in his continued employment, and in any event, his status as a municipal employee conferred such a property interest on him. He maintained, moreover, that even if he lacked a property interest in his employment, he nevertheless had a protected liberty interest in not being terminated in a manner that imposes on him a stigma or other disability that effectively forecloses him from finding employment elsewhere and, further, that his allegations were sufficient to state a claim of a due process violation

___

[4] This claim is derivative of the plaintiff's claim under 42 U.S.C. § 1983 because the plaintiff cannot prevail under § 7-465 unless he prevails under § 1983. Consequently, for purposes of this appeal, we refer hereinafter only to the plaintiff's claim under § 1983 and not to his claim under § 7-465.

under this alternate "stigma-plus" theory of recovery.[5] With respect to his equal protection claim, the plaintiff maintained that he was not required to allege that he had been treated differently than other similarly situated employees in order to state a legally sufficient claim founded on a "class of one" theory of recovery.[6] He

[5] "[Courts] have recognized that a[n] [at-will] employee can invoke the protections of the [d]ue [p]rocess [c]lause where that employee has suffered a loss of reputation coupled with the deprivation of a more tangible interest, such as government employment. . . . Such an action is referred to as a stigma-plus claim; it involves an injury to one's reputation (the stigma) coupled with the deprivation of some tangible interest or property right (the plus), without adequate process. . . .

"In an action based on a termination from government employment, a plaintiff must satisfy three elements in order to demonstrate a deprivation of the stigma component of a stigma-plus claim. . . . First, the plaintiff must . . . show that the government made stigmatizing statements about [him]—statements that call into question [the] plaintiff's good name, reputation, honor, or integrity. . . . [S]tatements that denigrate the employee's competence as a professional and impugn the employee's professional reputation in such a fashion as to effectively put a significant roadblock in that employee's continued ability to practice his or her profession will satisfy the stigma requirement. . . . Second, a plaintiff must prove these stigmatizing statements were made public. . . . Third, the plaintiff must show that the stigmatizing statements were made concurrently with, or in close temporal relationship to, the plaintiff's dismissal from government employment." (Citations omitted; internal quotation marks omitted.) *Segal* v. *City of New York*, 459 F.3d 207, 212–13 (2d Cir. 2006).

[6] "Although the prototypical equal protection claim involves discrimination against people based on their membership in a vulnerable class . . . the equal protection guarantee also extends to individuals who allege no specific class membership but are nonetheless subjected to invidious discrimination at the hands of government officials. . . . The [United States] Supreme Court [has] affirmed the validity of such class of one claims [when] the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." (Internal quotation marks omitted.) *Brooks* v. *Sweeney*, 299 Conn. 196, 206 n.11, 9 A.3d 347 (2010). "In order to succeed on a 'class of one' claim, the level of similarity between [the] plaintiffs and the persons with whom they compare themselves must be extremely high. See *Purze* v. *Village of Winthrop Harbor*, 286 F.3d 452, 455 (7th Cir. 2002) ('In order to succeed, the [plaintiffs] must demonstrate that they were treated differently than someone who is prima facie identical in all relevant respects.'). . . . The similarity and equal protection inquiries are thus virtually one and the same in such a 'class of one' case, and the standard for determining

asserted, rather, that it was sufficient for him merely to allege that the defendants intentionally had treated him in an irrational and wholly arbitrary manner.

On August 9, 2005, the trial court, *Skolnick, J.*, granted the defendants' motion to strike. The court explained that, under well established precedent, an employee has a right to procedural due process prior to termination if, and only if, pursuant to statute, rule or contract, the employee has a property interest in his employment such that he can be terminated only for cause. See *Board of Education* v. *Loudermill*, supra, 470 U.S. 538 ("[Employees'] federal constitutional [due process] claim depends on their having had a property right in continued employment. . . . If they did, the [s]tate could not deprive them of this property without due process. . . . Property interests [however] are not created by the [c]onstitution, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law [or a contract of employment] . . . ." [Citations omitted; internal quotation marks omitted.]). The court further explained that the plaintiff had not alleged any facts to support a finding that he had a property interest in his continued employment with the board. The court concluded, moreover, that even if the plaintiff had alleged such facts, his due process claim would have failed nonetheless because his pretermination hearing satisfied due process requirements.[7] The trial court also

whether another person's circumstances are similar to the plaintiff's must be, as *Purze* states, whether they are 'prima facie identical.' [Id.] We deem that test to require a plaintiff in such a 'class of one' case to show that: (i) no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy; and (ii) the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendant acted on the basis of a mistake." (Citations omitted.) *Neilson* v. *D'Angelis*, 409 F.3d 100, 104–105 (2d Cir. 2005).

[7] Specifically, the trial court stated: "Even if the plaintiff had alleged facts that demonstrate that he had a property interest in his employment, the defendants did give the plaintiff a pretermination hearing. When the plaintiff

concluded that the plaintiff's equal protection claim was insufficient as a matter of law because the plaintiff had failed to allege that he had been treated differently from other similarly situated employees based on impermissible considerations, such as race, religion or an intent to inhibit or punish the exercise of a constitutional right. The court further observed that to prevail on his class of one equal protection claim, the plaintiff was required to allege and prove that he had been treated differently than other like employees and that his disparate treatment was wholly irrational and arbitrary. The court also stated that the plaintiff had failed to plead any such facts.

On August 25, 2005, the plaintiff filed an amended complaint[8] containing the following additional allegations: (1) he had a property interest in his continued employment based upon the board's representations to him that he would be terminated only for cause; (2) his termination constituted a violation of a protected liberty interest because the defendants' accusations against him had unfairly stigmatized him and detrimentally affected his ability to seek and obtain other employment opportunities; and (3) the defendants intentionally had treated the plaintiff differently from other employees insofar as he was the only employee whom they accused of wrongful acts in connection with the computer net-

---

was notified that he should resign or he would be terminated, he wrote to the defendants and informed them that he was not given fair notice and an adequate opportunity to respond to the allegations against him. In response, the defendants sent him a letter stating that his termination was under consideration and that a hearing was to be held to address his pending termination. The hearing was held and the plaintiff was terminated. Although the hearing might not have been as elaborate as the plaintiff expected, he was given a pretermination hearing prior to termination. The plaintiff [thus] has not pleaded sufficient facts to support a cause of action based on a violation of due process."

[8] This complaint was captioned as a revised complaint. For ease of reference, however, we characterize it as an amended complaint.

work disruptions. In all other respects, the amended complaint was identical to the original complaint.

On October 25, 2005, the defendants moved to strike the amended complaint, claiming that the plaintiff's allegations of a due process violation were legally insufficient under *Fennell* v. *Hartford*, 238 Conn. 809, 816, 681 A.2d 934 (1996), in which this court concluded that principles of public policy preclude municipal employees from bringing implied contract claims against their municipal employers. The defendants further claimed that, even if the amended complaint adequately alleged a property interest in the plaintiff's continued employment with the board, Judge Skolnick previously had determined, in granting the defendants' motion to strike the original complaint, that the plaintiff had been afforded all the process he was due in connection with his termination. In the defendants' view, if the plaintiff had disagreed with that determination, he should have sought reconsideration by Judge Skolnick or appealed his decision to the Appellate Court, and that by failing to do so, the plaintiff had waived his right to replead his due process claim. Finally, the defendants also maintained that the plaintiff's class of one equal protection claim was legally insufficient because, in order to state such a claim, the plaintiff was required to allege that his termination had been motivated by malice, ill will or personal animosity toward him.

In response, the plaintiff contended, inter alia, that *Fennell* did not preclude his due process claim because "the *Fennell* court limited its holding to implied contracts based upon pension or employee manuals," whereas his implied contract claim was based on verbal representations. The plaintiff further maintained that, even if he did not have a property interest in his continued employment with the board, he had a protected liberty interest in not being dismissed on the basis of charges that likely would so damage his reputation in

the community as to make it practically impossible for him to find other employment. Finally, the plaintiff asserted that his class of one equal protection claim was legally sufficient because, under governing federal precedent, "a finding of 'ill will' is necessary to prove" such a claim.

On May 15, 2006, the trial court, *Gilardi, J.*, granted the defendants' motion to strike the amended complaint. In its decision, the court rejected the plaintiff's contention that *Fennell* was distinguishable from the present case. With respect to the plaintiff's stigma-plus due process and class of one equal protection claims, the trial court observed that the plaintiff's amended complaint contained only a "conclusory statement," and failed to allege facts necessary to support those claims. The court also observed that, with respect to the due process claim, Judge Skolnick, in striking the original complaint, expressly concluded that the plaintiff's pretermination hearing had satisfied due process requirements.

On June 1, 2006, the plaintiff filed a second amended complaint that was identical to his amended complaint except that the former included the additional allegation that the defendants had deprived him of his liberty interest in future employment without due process of law "by falsely accusing him of wrongful conduct during the course of his employment knowing that said accusations would have to be disclosed to future prospective employers of the plaintiff when the plaintiff sought other employment." On June 15, 2006, the defendants filed a motion to strike the second amended complaint, claiming that the new allegation did not cure the plaintiff's stigma-plus claim of its legal insufficiency, first, because the plaintiff had failed to allege that the defendants had made or published stigmatizing statements about him of a kind that have been found to give rise to a claim under the due process clause, and second,

because Judge Skolnick previously had concluded that the plaintiff's pretermination hearing was adequate for due process purposes. On December 21, 2006, the trial court, *Rodriguez, J.*, granted the defendants' motion to strike the second amended complaint for the reasons set forth in that motion.

On January 12, 2007, the plaintiff filed a third amended complaint. This complaint differed from the second amended complaint only in that it contained the additional allegation that the defendants had represented to the plaintiff that the terms of his employment "would be in accordance with" General Statutes § 10-151, which, the plaintiff alleged, "prohibits the termination of a board of education employee without just cause." On January 29, 2007, the defendants moved to strike the third amended complaint on the ground that § 10-151 applies exclusively to schoolteachers and not to all board of education employees. The defendants also maintained that the due process component of the third amended complaint must be stricken because Judge Skolnick previously had granted the defendants' motion to strike the very same claim. On July 5, 2007, Judge Gilardi granted the defendants' motion to strike the third amended complaint for the reasons advanced by the defendants.

On July 20, 2007, the plaintiff filed a fourth amended complaint that was identical to the third amended complaint in all material respects. Shortly thereafter, the defendants moved to strike the fourth amended complaint because all of the claims contained in that complaint previously had been stricken. On December 17, 2007, Judge Gilardi granted the defendants' motion to strike the fourth amended complaint. In doing so, Judge Gilardi concluded that, in five attempts, the plaintiff had failed to plead a legally sufficient due process or equal protection claim. Indeed, Judge Gilardi observed "that a thorough examination of the fourth amended

complaint in relation to the third amended complaint filed by the plaintiff reveals few differences. . . . [I]ts striking similarity to its predecessor in almost all substantive aspects warrants an admonition that in repleading a cause of action, curing the ailments of a previously stricken complaint requires more than the transposition of paragraphs and the insertion of legal conclusions." With regard to the stigma-plus claim, Judge Gilardi stated: "Even construing the pleadings in the light most favorable to the plaintiff, the plaintiff fails again to plead facts in his fourth amended complaint which are sufficient to support a stigma-plus liberty claim. Fundamentally, the plaintiff has alleged on five separate occasions that the defendants accused him of a particular course of action which led to his termination." Judge Gilardi further "noted that the plaintiff has yet to plead facts sufficient to allege a property interest in his employment. As was the case in the third amended complaint, the plaintiff has not pleaded any facts that suggest [that] he had more than a unilateral expectation in continued employment. There is nothing to suggest that he and the defendants had mutually explicit understandings supporting his claim of entitlement to continued employment or that any rules and regulations precluded the defendants from terminating his employment without just cause." (Internal quotation marks omitted.)

With respect to the plaintiff's class of one equal protection claim, Judge Gilardi observed that, in *Neilson* v. *D'Angelis*, 409 F.3d 100, 104–105 (2d Cir. 2005), the United States Court of Appeals for the Second Circuit held that, "[i]n order to succeed on a class of one claim, the level of similarity between [the] plaintiffs and the persons with whom they compare themselves must be extremely high. . . . [T]he standard for determining whether another person's circumstances are similar to the plaintiff's must be . . . whether they are prima facie identical. . . . We deem that test to require a

plaintiff in such a class of one case to show that . . . no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy . . . and . . . the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendant action on the basis of a mistake." (Citation omitted; internal quotation marks omitted.) Applying this standard to the plaintiff's fourth amended complaint, Judge Gilardi concluded: "In this case, the plaintiff does not plead any facts which would suggest that, as a comparative measure, he was discriminated against on the basis of any of the most basic normative classifications normally recognized by the courts of the United States, e.g., race, religion, gender, etc. Moreover, the plaintiff fails to plead facts which are sufficient to support even the mere assumption that there was another person, whose situation was prima facie identical to his own . . . . The plaintiff merely alleges that he was the only one investigated for a crime."

After his fourth amended complaint was stricken, the plaintiff did not replead and, subsequently, the court granted the defendants' motion for judgment. Thereafter, the defendants filed a motion requesting attorney's fees in the amount of $16,309. In connection with that motion, the defendants submitted an affidavit detailing the fees that they had incurred in defending against the plaintiff's four amended complaints. In a brief filed in support of the motion, the defendants claimed that they were entitled to recover attorney's fees because the plaintiff, over a period of three years, had continued to litigate his claims after it became clear that they were baseless. The defendants pointed out that not one of the plaintiff's five complaints had alleged a prima facie due process or equal protection claim, as evidenced by the trial courts' rulings on each of the

defendants' five motions to strike and, in particular, by the final such ruling, in which Judge Gilardi had admonished the plaintiff for repleading the same substantive allegations in all of the complaints. According to the defendants, it reasonably could be inferred from the plaintiff's repeated filing of five essentially identical complaints that the plaintiff either had been engaged in improper judge shopping or he simply was attempting to wear the defendants down, an equally improper basis for litigating the case. Finally, the defendants asserted that, to recover attorney's fees under 42 U.S.C. § 1988 (c), the prevailing defendant in a § 1983 action need not demonstrate that the plaintiff had acted in bad faith in proceeding with the action. They maintained, rather, that the applicable standard requires only that the prevailing defendant establish that the plaintiff's claims were "objectively" frivolous, unreasonable, or groundless, or that the plaintiff had continued to litigate those claims after they clearly became so, a finding that, the defendants further maintained, was amply supported by the record of the present case.

In his brief in opposition to the defendants' motion for attorney's fees, the plaintiff claimed that the so-called "American Rule"[9] governed an award of attorney's fees under 42 U.S.C. § 1988 (b) and, therefore, the trial court was authorized to award attorney's fees to the defendants only upon a finding that the plaintiff had acted in bad faith in commencing or pursuing his action. The plaintiff further claimed that the mere fact that the trial court had granted the defendants' motions to strike the five different complaints did not support a finding that the plaintiff had acted in bad faith in

---

[9] The common-law American Rule provides "that attorney's fees and ordinary expenses and burdens of litigation are not allowed to the successful party absent a contractual or statutory exception . . . [or] bad faith conduct of the other party or the other party's attorney." (Citation omitted; internal quotation marks omitted.) *Broadnax* v. *New Haven*, 270 Conn. 133, 178, 851 A.2d 1113 (2004).

filing them, or even that the complaints were frivolous or groundless.

At a hearing conducted by Judge Gilardi on the defendants' motion for attorney's fees, the defendants emphasized that they were not seeking to recover the fees that they had incurred in connection with their first motion to strike. Rather, they sought reimbursement only for the fees that they had incurred subsequent to the filing of that motion because, in their view, after the trial court granted the defendants' first motion to strike, it was apparent, based upon the court's ruling on the motion and the law governing the plaintiff's claims, that the plaintiff was unable to plead any set of facts entitling him to relief. The defendants further maintained that an award of attorney's fees was necessary to deter others who, like the plaintiff, elect to replead the same claims, repeatedly, in the hope of drawing a more sympathetic judge.

For his part, the plaintiff asserted that the record did not support a finding that he had acted in bad faith in bringing the action. The plaintiff also asserted that he had filed the amended complaints in a good faith attempt to shore up the claims that had been stricken, and not for any improper purpose. The plaintiff further maintained that he had decided against filing yet another amended complaint not because he agreed with Judge Gilardi's ruling that the fourth amended complaint was legally insufficient but, rather, to focus his resources on a separate action that he had brought against the defendants.[10] Following the hearing, Judge Gilardi issued a one sentence ruling granting the defen-

[10] Shortly after filing the present action, the plaintiff commenced a separate action against the defendants alleging wrongful discharge, libel, slander, breach of contract, promissory estoppel, intentional infliction of emotional distress, negligent infliction of emotional distress, negligent misrepresentation and invasion of privacy by false light. That action is not the subject of the present appeal.

dants $3000 of the $16,309 that they had sought in attorney's fees.

On appeal, the plaintiff claims that the trial court abused its discretion in awarding those fees.[11] In support of this claim, the plaintiff relies on numerous federal cases for the proposition that awards under 42 U.S.C. § 1988 (b) should be granted with considerable caution so as not to chill unduly the filing and prosecution of civil rights claims, including, potentially, meritorious claims. With respect to his claim that the record of the present case does not support an award of attorney's fees under § 1988 (b), the plaintiff's argument is limited to the following assertion: "The plaintiff was a public employee, employed by the town . . . and therefore alleged he had certain [constitutional] rights . . . . Although motions to strike were granted [that fact] does not equate to a [finding that the plaintiff's claims were] frivolous or groundless . . . ." (Internal quotation marks omitted.)

Before turning to the merits of the plaintiff's claim, we briefly address the defendants' contention that we should decline to review the claim because the plaintiff did not file a motion for articulation seeking an explication of the reasoning underlying the trial court's decision and, therefore, he has failed to provide us with an adequate record for review. See, e.g., *Zahringer* v. *Zahringer*, 262 Conn. 360, 370, 815 A.2d 75 (2003) ("[i]t is the responsibility of the appellant to move for an articulation in order to clarify the basis of the trial court's decision should such clarification be necessary for effective appellate review of the issue on appeal"). In the present case, however, clarification of the basis of the trial court's decision is unnecessary for appellate

---

[11] We note that the plaintiff makes no claim with respect to the amount of the attorney's fees award; his claim, rather, pertains only to the court's discretion to make such an award under the facts presented.

review because when, as here, an action is dismissed for failure to state a claim upon which relief can be granted, "the determination as to whether the [claim was] frivolous, unreasonable or groundless [simply] requires an evaluation of the allegations . . . in light of the controlling principles of substantive law." *LeBlank-Sternberg* v. *Fletcher*, 143 F.3d 765, 770 (2d Cir. 1998). Consequently, the trial court's failure to identify the specific facts and legal principles upon which it relied in rendering its decision is not an impediment to our review of the plaintiff's claim on appeal, the resolution of which depends upon an analysis of the allegations contained in the various complaints considered in light of the principles that govern the plaintiff's action. In other words, we may address the issue presented by this appeal without resort to speculation as to the factual or legal underpinnings of the trial court's decision.[12] Thus, we review the plaintiff's claim in accordance with the settled principles of law that govern it.

Under 42 U.S.C. § 1988 (b), the court has discretion to "allow the prevailing party . . . [in an action under 42 U.S.C. § 1983] a reasonable attorney's fee as part of the costs . . . ." Although § 1988 (b) makes no express distinction between prevailing plaintiffs and prevailing defendants, in *Christiansburg Garment Co.* v. *Equal Employment Opportunity Commission*, 434 U.S. 412, 422, 98 S. Ct. 694, 54 L. Ed. 2d 648 (1978), the United States Supreme Court construed the similar attorney's fees provision of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., as permitting an award of attorney's fees to a prevailing *defendant* only when the plaintiff's "claim was frivolous, unreasonable, or

---

[12] Of course, by not seeking an articulation of the trial court's decision, the plaintiff has waived any claim that the trial court applied an incorrect legal standard in awarding attorney's fees to the defendants. Because we presume that the trial court applied the correct standard, our review of the plaintiff's claim is limited to a determination of whether the court reasonably could have made the award that it did.

groundless, or [when] the plaintiff continued to litigate after it clearly became so."[13] Id. In *Hughes* v. *Rowe*, supra, 449 U.S. 14, the court concluded that the same "stringent" standard applies to an award of attorney's fees to a prevailing defendant in an action brought pursuant to § 1983. In reaching its conclusion in *Hughes*, the court, as it had in *Christiansburg Garment Co.*, explained that a more liberal standard would "undercut the efforts of Congress to promote the vigorous enforcement" of our civil rights laws. Id., 15, quoting *Christiansburg Garment Co.* v. *Equal Employment Opportunity Commission*, supra, 422. Nevertheless, as the court in *Christiansburg Garment Co.* concluded for purposes of Title VII, a finding that the plaintiff acted in bad faith is not a prerequisite to an award of attorney's fees to a prevailing defendant under § 1988 (b).[14] See *Christiansburg Garment Co.* v. *Equal Employment Opportunity Commission*, supra, 421 ("a [D]istrict [C]ourt may in its discretion award attorney's fees to a prevailing defendant in a Title VII case upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith"); *Mikes* v. *Straus*, 274 F.3d 687, 705 (2d Cir. 2001) ("a plaintiff's subjective bad faith is not an element under § 1988").

In determining whether an action is frivolous, courts generally consider three factors: "(1) whether the plaintiff established a prima facie case; (2) whether the defendant offered to settle; and (3) whether the trial

---

[13] By contrast, the court determined that "a prevailing *plaintiff* [in an action under Title VII] ordinarily is to be awarded attorney's fees in all but special circumstances." (Emphasis in original.) *Christiansburg Garment Co.* v. *Equal Employment Opportunity Commission*, supra, 434 U.S. 417.

[14] Of course, a plaintiff's subjective bad faith "might provide 'an even stronger basis for charging him with [attorney's] fees incurred by the defense'" in an action brought under 42 U.S.C. § 1983. *Davidson* v. *Keenan*, 740 F.2d 129, 133 (2d Cir. 1984), quoting *Christiansburg Garment Co.* v. *Equal Employment Opportunity Commission*, supra, 434 U.S. 422.

court dismissed the case prior to trial or held a full-blown trial on the merits." *Sullivan* v. *School Board*, 773 F.2d 1182, 1189 (11th Cir. 1985). "A claim is frivolous when, viewed objectively, it may be said to have no reasonable chance of success, and present no valid argument to modify present law." *Mikes* v. *Straus*, supra, 274 F.3d 705. "Application of this standard is entrusted to the discretion of the [trial] court, and its decision will be reversed only when that discretion is abused." *Parker* v. *Sony Pictures Entertainment, Inc.*, 260 F.3d 100, 111 (2d Cir. 2001).

Upon review of the plaintiff's original complaint and his four amended complaints, we conclude that the record supports the trial court's decision awarding the defendants a portion of the attorney's fees they incurred in defending against the plaintiff's action. Indeed, as the defendants contend, all three factors to be considered in determining whether an action is frivolous are met in the present case: the plaintiff's complaint failed to state a prima facie case, the defendant never offered to settle the case,[15] and the action was dismissed prior to trial. Moreover, as the trial court observed in granting the defendants' fifth motion to strike, *not one* of the plaintiff's five complaints alleged a legally sufficient due process or equal protection claim, and although the plaintiff apparently does not agree with that determination, he has chosen not to challenge it by way of appeal. In fact, as we have indicated, the plaintiff has offered no substantive explanation as to why his claims were not objectively groundless in light of controlling legal principles; he merely asserts that they were not.

With respect to the due process claim in particular, we agree with the defendants that, after Judge Skolnick

---

[15] The defendants have asserted both in the trial court and in their brief to this court that they never offered to settle the plaintiff's claims. The plaintiff has not challenged that contention, which we therefore accept as true for purposes of our analysis.

granted their motion to strike the original complaint, the plaintiff should have recognized that repleading that claim was not an option in light of the trial court's ruling. This is so not simply because of the trial court's determination that the plaintiff, as an at-will employee, had no property interest in his continued employment, but more fundamentally because the trial court also determined, *on the basis of the allegations contained in the complaint itself,* that the pretermination hearing satisfied the requirements of due process. See, e.g., *Segal* v. *City of New York,* 459 F.3d 207, 218 (2d Cir. 2006) ("[I]n the context of an at-will government employee, a reasonably prompt, post-termination name-clearing hearing satisfies constitutional due process . . . . The availability of such a hearing . . . defeats [a plaintiff's] stigma-plus claims."). Notwithstanding this fatal defect, the plaintiff continued to litigate his due process claim for approximately three years, refiling it on four separate occasions without altering any of the underlying substantive allegations. By proceeding in such a manner, the plaintiff exposed himself to a potential assessment of attorney's fees under 42 U.S.C. § 1988 (b) predicated on a finding that he had persisted in litigating a patently baseless claim. See, e.g., *DeBauche* v. *Trani,* 191 F.3d 499, 510 (4th Cir. 1999) (trial court acted within its discretion in awarding attorney's fees against plaintiff on ground that plaintiff's claim was groundless); *Hutchinson* v. *Staton,* 994 F.2d 1076, 1080 (4th Cir. 1993) (District Court properly granted attorney's fees against plaintiff who brought § 1983 claim which "had no basis in fact"); *Sassower* v. *Field,* 973 F.2d 75, 79 (2d Cir. 1992) (recognizing that "even a civil rights plaintiff must bear the risk of an award of [a] defendant's attorney's fees when . . . a judge concludes that the claim . . . was entirely insubstantial"), cert. denied, 507 U.S. 1043, 113 S. Ct. 1879, 123 L. Ed. 2d 497 (1993); *Munson* v. *Board of School Directors,*

969 F.2d 266, 269 (7th Cir. 1992) (sanctions against plaintiff under § 1988 [b] intended to "deter frivolous filings and to ensure that the ability of the courts to remedy civil rights violations is not restricted by dockets crowded with baseless litigation"); *Harbulak* v. *Suffolk*, 654 F.2d 194, 198 (2d Cir. 1981) (reversing District Court's denial of prevailing defendant's request for attorney's fees when plaintiff "had the means and the knowledge, or at least the ability to obtain the knowledge, to recognize that his claim . . . was unreasonable and groundless, if not frivolous [and] [n]evertheless . . . continued to litigate it through to the summary judgment entered against him").

The record also fully supports the trial court's determination that the plaintiff in the present case continued to litigate his class of one equal protection claim long after it had become clear that that claim was groundless. As Judge Gilardi explained in granting the defendants' fifth motion to strike, because the plaintiff never alleged that his employment was terminated on the basis of his membership in a protected class, he could prevail under an equal protection theory only by alleging and proving that he was treated differently than someone who was identically situated to him in all material respects and further, that no legitimate public policy rationale warranted the differential treatment. See, e.g., *Neilson* v. *D'Angelis*, supra, 409 F.3d 105. As Judge Gilardi further explained, however, not one of the plaintiff's complaints identified a single person who was similarly situated to the plaintiff. Rather, the plaintiff merely alleged that he was the only employee investigated for and accused of disrupting the board's computer network. As a consequence, and for the reasons previously set forth, the trial court acted well within its discretion in awarding the defendants a portion of the attorney's fees that they incurred in defending against the plaintiff's action.

The plaintiff nonetheless contends that the attorney's fees award should be vacated due to the chilling effect that such an award could have on prospective future civil rights plaintiffs. As the United States Court of Appeals for the Fourth Circuit explained in addressing a similar contention, when the stringent fee shifting standard embodied in 42 U.S.C. § 1988 (b) has been met and "a court imposes fees on a plaintiff who has pressed a frivolous claim, it chills nothing that is worth encouraging. In this case, therefore, once it found [the plaintiff's] claim to be groundless, the [trial] court allayed any concern that legitimate § 1983 claims would be chilled." (Internal quotation marks omitted.) *Hutchinson* v. *Staton*, supra, 994 F.2d 1081. Although we emphasize that an award of attorney's fees under § 1988 (b) is appropriate only in those cases where the action is baseless or where the plaintiff continued to litigate after the groundlessness of the action had become evident, we will not disturb such an award when, as here, it clearly is warranted.

The decision is affirmed.

In this opinion the other justices concurred.