******************************************************************

   The ''officially released'' date that appears near the beginning of this opinion is the date the opinion was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the ''officially released'' date appearing in the opinion.

   This opinion is subject to revisions and editorial changes, not of a substantive nature, and corrections of a technical nature prior to publication in the Connecticut Law Journal.

******************************************************************

D'AURIA, J., with whom ROBINSON, C. J., and ECKER, J., join, concurring in part and concurring in the judgment. I agree with the majority that the defendant in the present case, Stephanie Haig, has not established that the public hearing on the special permit application submitted by the plaintiff, Thomas Priore, before the Planning and Zoning Commission of the Town of Greenwich (commission) was a quasi-judicial hearing. Like the majority, I therefore conclude that she has not demonstrated that her statements before that commission are entitled to absolute immunity under the litigation privilege. I write separately, however, for two reasons.

First, although I agree with the majority's ultimate holding, I do not agree with certain aspects of its analysis. In short, I believe that the majority (1) understates the benefit of the plaintiff, an applicant before the commission, within that very same forum, being able to refute any false statements made about him at the public hearing, (2) overemphasizes the need for "due process" safeguards within that forum, and (3) overstates protections afforded to the defendant by Connecticut's "strategic lawsuits against public participation" (anti-SLAPP) statute, General Statutes § 52-196a. Second, the defendant's statements might be covered by an absolute immunity of a different strain. Specifically, although there are no clear precedents in this state, I believe that a public hearing on a special permit application before a town's planning and zoning commission may constitute a legislative proceeding, and, as such, comments made during and relevant to such a proceeding may be entitled to absolute immunity. Because that issue has not been raised either in the trial court or in this court, however, that is an issue for another day.

I

The majority supports its conclusion that the public hearing on the plaintiff's special permit application was not a quasi-judicial proceeding in part by its description of the plaintiff's ability to refute the defendant's statement before the commission as a "limited opportunity . . . ." Although I conclude that this opportunity is not a sufficient procedural safeguard to assist the defendant in demonstrating that the commission undertakes a quasi-judicial function, I believe that the majority understates this opportunity.

Proceedings before such local agencies are not known for formality. The defendant made her statement during a period devoted to public comment on the plaintiff's application to, among other things, relocate a sewer line that ran through his property and serviced a number of "up-line users." A number of people, including the defendant, spoke against the application because

of how it would affect trees in the neighborhood. The majority notes that the "record is silent on whether the plaintiff attended the hearing." If he chose to attend, the plaintiff undoubtedly could have responded to the defendant's allegation that he had a "serious criminal past," including that he had "paid [more than] $40 million in fines to the [Securities and Exchange Commission]." (Internal quotation marks omitted.) In fact, the plaintiff's engineer, Anthony D'Andrea, who did attend the hearing, responded to a number of assertions made by those who opposed the application. And, even if the plaintiff was not at the hearing, there does not appear to be anything that would have prevented him from correcting the record after the hearing. In fact, we know, as the majority observes, that the commission "adjourned the hearing and tabl[ed] the decision on whether to approve the application until the plaintiff or his representatives provided it with the clarifications and information that it had requested." (Internal quotation marks omitted.) Surely, with that requested information, the plaintiff could have, if he wished, provided the commission with information explaining that the defendant's statement was false. Specifically, he could have informed the commission, as he informed the trial court in his memorandum of law in support of his motion to strike the defendant's special defenses, that, in an action entitled *Securities & Exchange Commission* v. *ICP Asset Management, LLC*, United States District Court, Docket No. 10 Civ. 4791 (LAK) (S.D.N.Y. September 6, 2012), he personally was assessed only a "modest" civil fine of approximately $487,000.[1]

Although it cannot be disputed that it was not the commission's responsibility, or perhaps not within its jurisdiction, to adjudicate the truthfulness of the defendant's statement about the plaintiff's supposed criminal past, this "limited opportunity" for the plaintiff to respond could have helped ensure the accuracy of the information placed before the commission in two ways: (1) The plaintiff, who had the greatest interest in making sure that the commission received accurate information to reach the right result on his application, could have corrected the record, and (2) once the plaintiff disputed or refuted the statement, the agency could have investigated the veracity of the statement at issue if it considered it important to a determination of the plaintiff's special permit application.

The majority disregards the benefit of this opportunity, I believe in large part, because of its overreliance on what it labels the lack of adequate "due process" safeguards before the commission. I agree that procedural safeguards are necessary to promote the reliability of the result before the commission, but the kind of due process rights contemplated by the majority is not implicated in the present case. The majority appears to contend that, for a planning and zoning commission proceeding to be eligible for quasi-judicial status, when

a witness makes a statement before that commission, there must be sufficient procedural safeguards to give the plaintiff an opportunity not only to rebut the statement but for the agency to determine the statement's veracity so as to protect the plaintiff's reputation—in essence, a name-clearing hearing. The plaintiff, however, has no due process right to a determination of the accuracy of the statement of a witness who was not a state actor before a planning and zoning commission.

More is required to establish a due process violation than a simple claim of defamation: "[When] a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential. . . . [T]he remedy mandated by the [d]ue [p]rocess [c]lause of the [f]ourteenth [a]mendment is an opportunity to refute the charge. . . . The purpose of such notice and hearing is to provide the person an opportunity to clear his name . . . ." (Citation omitted; internal quotation marks omitted.) *Hunt* v. *Prior*, 236 Conn. 421, 441, 673 A.2d 514 (1996). "However, under *Paul* v. *Davis*, [424 U.S. 693, 710–12, 96 S. Ct. 1155, 47 L. Ed. 2d 405 (1976)], government acts defaming an individual implicate a liberty interest only [when] the individual suffers a related alteration of his legal status or deprivation of a right recognized under state law." *Hunt* v. *Prior*, supra, 441; see also *Singhaviroj* v. *Board of Education*, 301 Conn. 1, 6 n.5, 17 A.3d 1013 (2011) ("[s]uch an action is referred to as a stigma-plus claim; it involves an injury to one's reputation (the stigma) coupled with the deprivation of some tangible interest or property right (the plus), without adequate process" (internal quotation marks omitted)).

In the present case, there is no allegation that the government did anything to the plaintiff to place his "good name, reputation, honor, or integrity . . . at stake . . . ." (Internal quotation marks omitted.) *Hunt* v. *Prior*, supra, 236 Conn. 441. The commission is not even a party to the case. Rather, the plaintiff complains that the defendant, a member of the public and not a government actor, referred to his " 'criminal past' " at a public meeting. Even putting aside that there is no state action involved, to make out a due process claim, not only would the plaintiff have to demonstrate that he was injured in some way beyond being defamed (i.e., a stigma), but he also would have to demonstrate the deprivation of some tangible interest or property right (i.e., a plus). In the present case, the plaintiff alleges only that the defendant made the allegedly false statement "intentionally . . . to cause damage to [his] reputation" and that this statement did in fact "cause reputational damage . . . in his profession . . . ." Although it is true that "a liberty interest is implicated when a plaintiff can show both harm to his reputation and serious damage to his prospects for future employment in his profession"; (internal quotation marks omitted)

*Hunt* v. *Prior*, supra, 441; the plaintiff in the present case merely alleges harm to his professional reputation, not any "serious damage to his prospects for future employment in his profession . . . ." (Internal quotation marks omitted.) Id. Even if these allegations were sufficient to establish a stigma-plus claim, the plaintiff alleges harm to his professional reputation only as part of his damages; he does not assert a due process claim. Thus, although I agree with the majority that we must consider procedural safeguards when determining whether a proceeding is quasi-judicial, the majority's reliance on due process principles erroneously heightens the defendant's burden in establishing immunity from suit because the plaintiff has not alleged harm by a state actor or asserted a stigma-plus claim.

Finally, I also believe that the majority overstates the protections afforded to the defendant by our anti-SLAPP statute. The majority contends that § 52-196a "appl[ies] in precisely this type of situation to ensure speech [is] not chilled." In my view, § 52-196a does little to protect the defendant's first amendment rights, as it does not provide the defendant with any new or additional substantive rights. Compare *Trinity Christian School* v. *Commission on Human Rights & Opportunities*, 329 Conn. 684, 696, 189 A.3d 79 (2018) ("when the legislature intends to confer immunity from liability or from suit, it does so in distinctive and unmistakable terms"), with General Statutes § 52-196a. Rather, the statute merely creates a procedure by which the defendant may have her first amendment defense considered in an expedited fashion, as early as possible in the litigation, before the defendant is burdened by the cost of discovery. See General Statutes § 52-196a (b). It still requires litigation, albeit expedited, to determine whether the first amendment protects the defendant's statements. See General Statutes § 52-196a (e) (1). Moreover, the special motion to dismiss permitted under § 52-196a is easily defeated under a probable cause standard. See General Statutes § 52-196a (e) (3). Thus, in my view, the anti-SLAPP statute does little to ameliorate the concern that lawsuits such as this one, brought against defendants for statements made in these proceedings, will discourage public participation before an agency such as the commission.

## II

If a public hearing on a special permit application before a town's planning and zoning commission is not quasi-judicial, and I agree with the majority that the defendant has not established that it is, it may nonetheless very well constitute a legislative proceeding. Although Connecticut appellate courts have not addressed this issue, other jurisdictions have held that witnesses in a legislative proceeding are entitled to absolute immunity. These jurisdictions have applied different approaches to arrive at this conclusion.

For example, some state courts have held that, under their common law, the litigation privilege extends to both quasi-judicial and legislative proceedings so that witness comments made in a legislative proceeding are entitled to absolute immunity. See, e.g., *In re IBP Confidential Business Documents Litigation*, 755 F.2d 1300, 1310–11 (8th Cir. 1985) (granting defendant absolute immunity for statements made in letter submitted to congressional subcommittee, explaining that, under common law of New York and Tennessee, "[a] witness actually testifying before a legislative committee, like a witness testifying in court, enjoys absolute immunity from liability for defamation for statements made that are pertinent to the subject of inquiry or responsive to questions asked"); *Fiore* v. *Rogero*, 144 So. 2d 99, 102 (Fla. App. 1962) (one who testifies before legislative body or committee is "generally subject to the same rules of privilege accorded similar testimony in judicial proceedings"); *Erickson* v. *Marsh & McLennan Co.*, 117 N.J. 539, 563, 569 A.2d 793 (1990) ("[a] statement made in the course of judicial, administrative, or legislative proceedings is absolutely privileged and wholly immune from liability").

Other courts have held that the litigation privilege extends to witness statements made in a legislative proceeding because their state follows the Restatement (Second) of Torts. See, e.g., *Beverly Enterprises, Inc.* v. *Trump*, 1 F. Supp. 2d 489, 493 (W.D. Pa. 1998) (The defendant was entitled to absolute immunity for unsworn statements she made at a town hall meeting because "Pennsylvania has adopted section 590A of the Restatement (Second) of Torts as its common law. . . . That section provides, 'A witness is absolutely privileged to publish defamatory matter as part of a legislative proceeding in which he is testifying or in communications preliminary to the proceeding, if the matter has some relation to the proceeding.' . . . This testimonial immunity is absolute and similar in all respects to that afforded a witness in a judicial proceeding." (Citations omitted.)), aff'd, 182 F.3d 183 (3d Cir. 1999), cert. denied, 528 U.S. 1078, 120 S. Ct. 795, 145 L. Ed. 2d 670 (2000); *Burns* v. *Davis*, 196 Ariz. 155, 162, 993 P.2d 1119 (App. 1999) ("the Restatement [(Second) of Torts] extends absolute immunity in limited specified situations to judicial officers, attorneys at law, parties to judicial proceedings, witnesses in judicial proceedings, jurors, legislators, [and] witnesses in legislative proceedings"), review denied, Arizona Supreme Court, Docket No. CV-99-0365-PR (February 8, 2000). The defendant, however, in the present case does not ask this court to extend our litigation privilege to statements made in and relevant to legislative proceedings; nor does she ask that this court adopt provisions of the Restatement (Second) of Torts.

Finally, another avenue by which state courts have

granted absolute immunity to witness statements made in a legislative proceeding is by extending the scope of the legislative privilege. In Connecticut, this privilege applies to certain statements made by legislators in legislative proceedings. See, e.g., *Office of Governor* v. *Select Committee of Inquiry*, 271 Conn. 540, 563, 858 A.2d 709 (2004); *Traylor* v. *Gerratana*, 148 Conn. App. 605, 611–12, 88 A.3d 552, cert. denied, 312 Conn. 901, 91 A.3d 908, and cert. denied, 312 Conn. 902, 112 A.3d 778, cert. denied, 574 U.S. 978, 135 S. Ct. 444, 190 L. Ed. 2d 336 (2014). Other state courts have held that this privilege extends to witnesses, not just the legislators. See, e.g., *Arlington Heights National Bank* v. *Arlington Heights Federal Savings & Loan Assn.*, 37 Ill. 2d 546, 549, 229 N.E.2d 514 (1967) ("Traditionally, the members of legislative and judicial bodies have been accorded absolute privilege in the performance of their official acts and duties . . . and it is clear that an individual citizen is similarly privileged to some extent in his appearances and actions before these bodies." (Citations omitted.)). If a witness enjoys absolute immunity for statements made before a committee of the legislature, I would have trouble distinguishing the defendant in the present case from any other legislative witness, as she petitioned her local government to consider information that, in her view, was important when acting on the plaintiff's special permit application. See *Beverly Enterprises, Inc.* v. *Trump*, supra, 1 F. Supp. 2d 493 ("[A] legislative proceeding [is not] limited to an official hearing called by a legislative body, or by duly formed committees of that body, where witnesses are compelled to appear and testify under oath. . . . [T]he definition of a legislative proceeding is broad enough to encompass proceedings—including informal fact-finding, information gathering, or investigative activities—that are conducted by legislators with the objective purpose of aiding the legislators in the drafting, debating, or adopting of proposed legislation." (Citations omitted.)); *J. D. Construction Corp.* v. *Isaacs*, 51 N.J. 263, 271, 239 A.2d 657 (1968) (absolute immunity may be accorded statements made before municipal governing body hearing zoning appeal depending "on individual circumstances and the . . . pertinency and relevancy of remarks or contentions to the questions legitimately before the governing body"). The defendant, however, has not claimed that the legislative privilege applies in the present case.

Thus, it remains an issue for this court to decide, another day, whether a public hearing on a special permit application before a town's planning and zoning commission constitutes a legislative proceeding and, if so, whether absolute immunity applies to public statements made at such a proceeding.

Accordingly, I concur in part.

[1] In support of his memorandum of law in support of his motion to strike, the plaintiff attached as an exhibit the final judgment in *Securities &*

*Exchange Commission* v. *ICP Asset Management, LLC,* supra, United States District Court, Docket No. 10 Civ. 4791 (LAK). He also provided this exhibit in the appendix to his brief to this court. Pursuant to that judgment, the plaintiff was found liable for disgorgement in the amount of $797,337, prejudgment interest in the amount of $215,045, and a civil penalty in the amount of $487,618, for a total amount due of $1,500,000. As to the other defendants in that federal securities case, the final judgment held ICP Asset Management, LLC, and Institutional Credit Partners, LLC, liable, jointly and severally, for disgorgement in the amount of $13,916,005 and prejudgment interest of $3,709,028; held ICP Asset Management, LLC, liable for a civil penalty in the amount of $650,000; and held ICP Securities, LLC, liable for disgorgement in the amount of $1,637,581, prejudgment interest in the amount of $301,893, and a civil penalty in the amount of $1,939,474. In total, the final judgment required the defendants to pay $23,653,981. The plaintiff in the present case, Priore, consented to the entry of this final judgment on behalf of himself and on behalf of all other defendants as president/CEO of those companies. This consent judgment was specifically limited to resolving civil liability. This court is not aware, however, of any criminal action brought in relation to this case.

———————————————